106 N.J. Super. 6 (1969)
254 A.2d 111
STONCO ELECTRIC PRODUCTS COMPANY, APPELLANT,
v.
BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, AND CAROLYN BRANTLEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted June 2, 1969.
Decided June 9, 1969.
*7 Before Judges GAULKIN, COLLESTER and LABRECQUE.
*8 Mr. Myles A. Cane for appellant (Mr. Mark A. Buckstein, on the brief).
Mr. Edward A. Kaplan for respondents (Mr. Charles Quinn, on the brief).
The opinion of the court was delivered by GAULKIN, S.J.A.D.
Claimant Mrs. Brantley was awarded unemployment compensation and her employer, Stonco Electric Products Company, appeals.
Claimant quit after being employed by Stonco for almost two years. She claimed she was compelled to do so because the work was too heavy and the working area too cold.
The employees of Stonco, including claimant, were members of a union. The union contract with Stonco provided for "grievance and arbitration procedure." Grievances were to be presented in writing, the first step being "Between the Steward on the one hand and the assistant Production Superintendent on the other hand. The aggrieved employee may, upon request to the union, be present."
The Division of Employment Security held that claimant was disqualified for benefits because she left work "voluntarily and without good cause attributable to such work." It based its decision on the fact that claimant left "without attempting to adjust grievances." We presume the Division meant under the collective bargaining agreement. The Appeal Tribunal affirmed. In its opinion, it said:
"The claimant was a member of the union. She complained to her supervisor many times that the packing job was too heavy for her. She also discussed the matter with union representatives. However, she did not file a formal grievance at anytime because she felt that the union was `no good' and could not do anything for her. She left her work because of the weight of the packages she handled and because the work area was cold.

* * * * * * * *
The claimant left her work before she attempted fully to adjust her grievance. A principal function of a union is to intercede in behalf of a worker who has a justified complaint about working conditions. Before finally deciding to voluntarily leave work, the claimant *9 could have filed a grievance with her union in an attempt to alleviate her complaints about her work."
The Board of Review reversed. It made no mention of the collective bargaining agreement or of the failure to use its grievance machinery. It said:
"The Findings of Fact of the Appeal Tribunal are substantially correct and are affirmed and adopted as though fully set forth herein at length.

* * * * * * * *
The claimant's work was too heavy for her and the area in which she worked caused her to catch colds frequently. She complained about both and nothing was done about either. There was nothing else for the claimant to do but to leave her work and she had good cause attributable thereto for so doing. Hence, no disqualification arises."
Stonco's principal argument on appeal is that the claimant should be denied benefits for failing to pursue the grievance procedures. It contends variously that a quit cannot be for "good cause" if no attempt has been made to use existing grievance procedures to correct the alleged "cause," and that grievance procedures, as well as the arbitration with which they are to culminate under the contract involved here, are administrative steps which must be exhausted before unemployment benefits may be sought.
The basic purpose of the Unemployment Compensation Act is to relieve employees, and the general public as well, from the adverse impact of involuntary unemployment. N.J.S.A. 43:21-2; Sweeney v. Board of Review, 43 N.J. 535, 539 (1965); Campbell Soup Co. v. Board of Review, Division of Employment Security, 13 N.J. 431, 436 (1953). Pursuant to this aim the statute specifies those situations in which the claimant's separation from his job shall be deemed not "involuntary," thereby disqualifying him for benefits under the law. N.J.S.A. 43:21-5. First among these categories is the one relied upon by the parties and the tribunals below in the present case, N.J.S.A. 43:21-5(a), which disqualifies from benefits any claimant who "has left work *10 voluntarily without good cause attributable to such work * * *."
There is no reference in the statute to exhaustion of collective bargaining remedies nor suggestion that prior prosecution of a grievance under a collective bargaining agreement is a requisite to coverage. N.J.S.A. 43:21-5(d) disqualifies employees whose unemployment is due to a work stoppage produced by a labor dispute in which he is participating or has a direct interest, but it sheds no light on the question presented here. Clearly, claimant's quit is not the product of a work stoppage within N.J.S.A. 43:21-5(d) and there is no reference to exhaustion or compliance with union contracts in that section.
It seems to us that Stonco's position that compliance with available grievance procedures is a necessary requisite to a showing of good cause or a filing for benefits is without merit. The burden of showing good cause under N.J.S.A. 43:21-5 is on the claimant and the test is whether there was "cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the employed." Zielenski v. Board of Review, 85 N.J. Super. 46, 52 (App. Div. 1964). In arriving at a conclusion on this question it is necessary for the administrative tribunal to consider all the evidence bearing on the claimant's decision to quit.
Evidence of claimant's failure to seek redress of his grievances before quitting, including failure to press his right to pursue a grievance procedure, is certainly relevant and probative on the bona fides of his claim. Cf. Zielenski, supra, at p. 54. But failure to pursue such remedies does not, by itself, disqualify the claimant, disentitle him to benefits, or establish that the grievances alleged to have produced the quit were not sufficient to constitute "good cause" under N.J.S.A. 43:21-5.
It is true that the grievance procedure has been established in order to achieve expeditious resolution of labor disputes and that correction of the working conditions complained *11 of here are likely within the purview of that intent. It is also true that courts are often loath to place themselves in the stead of the arbitration boards designed to administer such agreements and decide such disputes. See Cox, "Rights Under a Labor Agreement," 69 Harv. L. Rev. 601, 648 (1956). But that reluctance typically manifests itself when an employee seeks to bypass the grievance procedure and go directly to the courts for common law relief from an alleged breach of the collective bargaining agreement. E.g., Henderson v. Eastern Gas and Fuel Associates, 290 F.2d 677 (4 Cir. 1961), affirming a dismissal of plaintiffs' claim for wages, alleged to be due under a collective bargaining agreement, on the ground that they had failed to exhaust grievance procedures with respect to their claim; Hooser v. Baltimore and Ohio R.R. Co., 177 F. Supp. 186 (S.D. Ind. 1959), affirmed 279 F.2d 197 (7 Cir. 1960), dismissing plaintiffs' suit for damages for wrongful discharge on the ground that they had failed to submit these claims to their employer within the time period prescribed by the collective bargaining agreement; Cox, "Rights Under a Labor Agreement," supra, at pp. 647-652.
Here, the claimant's action is specifically authorized by a carefully constructed statutory scheme which makes no mention of collective bargaining. We hold that claimant's remedies in the grievance procedure and before the Division are concurrent and failure to exercise the former does not necessarily preclude the latter.
The authorities cited by Stonco do not dictate a contrary result. In Zielenski, supra, the court did not hold that failure to file a grievance was of itself dispositive of the claim, but did accept it as evidence which militated against the bona fides of the claim.
In the Pennsylvania case of Nathan Feldman Sons v. Unemployment Compensation Board of Review, 185 Pa. Super. 205, 137 A.2d 839 (Super. Ct. 1958), the court reversed, as not supported by the evidence, the decision of the Board of Review that claimant had been fired from her job, *12 and reinstated the referee's finding that claimant voluntarily terminated her employment without good cause. The court upheld the referee's finding as supported by the evidence, largely on the grounds that claimant's grievances against her foreman could have been pursued through the grievance procedure and that a quit prompted by a temperamental clash with a superior is not for good cause. The court did not hold that the failure to file a grievance was itself fatal, but rather that it was evidence in support of the referee's holding.
On the other hand, in Board of Review v. Kearfott Mfg. Corp., 46 N.J. Super. 39 (App. Div. 1957), the court affirmed the Board's allowance of benefits to a claimant who quit his job because his employer failed to permit him to return to a former job, from which he had been promoted, as required by the union contract. The court held that the employer's breach of the union contract in that case justified claimant's quit. No mention was made of whether there was a contractual grievance procedure or whether claimant pursued it, although the opinion does state that he had complained unsuccessfully to his union representative.
In short, we hold that failure to pursue grievance machinery does not necessarily bar a claimant from collecting unemployment benefits.
The next question is, broadly, whether the decision of the Appeal Tribunal and the Board of Review that she quit because the work was too heavy and the working area too cold is supported by substantial evidence. We find that it is.
Affirmed.