**Dennis V. Garcia v. Department of Employment and Training**

[488 A.2d 762]

No. 83-316

Present: **Hill, Underwood, Peck and Gibson, JJ., and Daley, J. (Ret.),**
**Specially Assigned**

Opinion Filed January 18, 1985

*Cheney & Brock,* Montpelier, for Defendant-Appellant.

*Matthew R. Gould,* Montpelier, for Defendant-Appellee.

**Gibson, J.** The Vermont League of Cities and Towns Insurance Trust appeals from a decision of the Vermont Employment Security Board awarding unemployment benefits to Dennis Garcia, a former employee of the City of Barre. The Trust, which provides the City of Barre with insurance against unemployment claims and is thus the real party in interest, challenges the Board's conclusion that Garcia gave due notice before quitting and that he left with good cause attributable to his employer. We affirm.

Dennis Garcia resigned as a custodian employed by the City of Barre, in a letter that simply cited "personal reasons." When Garcia initially applied for unemployment compensation, the claims examiner disqualified him because "personal reasons" were not "good cause attributable to the employer." 21 V.S.A. § 1344(a)(2)(A).*

At his appeal hearing, Garcia detailed his "personal reasons." He said that the chief of police had instructed him to help steal tables from the city garage, but that when he reported the incident immediately thereafter to his supervisor, City Manager Paul Hermann, he was ordered out of the office. At the time of the incident, Garcia had little credibility with Hermann, and the police chief was popular throughout Barre. Hermann acknowledged, "I told him to get the hell out of my office!"

The appeals referee found that Garcia had left his job because of dissatisfaction with working conditions and sustained his disqualification from unemployment benefits, concluding that the departure was without good cause attributable to the employer. There was no reference in the decision to Garcia's claim that he had been asked to steal on behalf of the police chief. Garcia did not appeal this decision.

During the following summer, the police chief was prosecuted for unrelated larcenies of city property. Thereafter, Garcia sought reconsideration of his unemployment claim, and City Manager Hermann offered no objection. Citing "new evidence . . . which both employer and claimant believe may constitute grounds for revers[al]," the Commissioner of the

---

* 21 V.S.A. § 1344(a)(2)(A) provides as follows:

(a) An individual shall be disqualified for benefits:

. . . .

(2) For any week benefits are claimed, except as provided in division (3) of this section, until he has presented evidence to the satisfaction of the commissioner that he has performed services in employment for a bona fide employer and has had earnings in excess of six times his weekly benefit amount if the commissioner finds that such individual is unemployed because:

(A) He has left the employ of his last employing unit voluntarily without good cause attributable to such employing unit. An individual shall not suffer more than one disqualification by reason of such separation.

Department of Employment and Training ordered a review. On the basis of that review, the Board concluded:

> the claimant possessed a reasonable belief that [the chief] was stealing and when he went to his supervisor . . . , he was totally discredited when Hermann told him to "get the hell out of the office . . . ." In our view, that the claimant did not comply with the niceties and formalities of the grievance procedure is irrelevant since the employer had due notice of his problems and chose to ignore or belittle them.

Without challenging the factual findings, the Trust appeals the Board's legal conclusion that "due notice" was given.

## I.

The Trust first insists that the Board's finding that "the claimant did not comply with the niceties and formalities of the grievance procedure" mandates Garcia's disqualification from unemployment benefits. As a matter of law, the Trust would subordinate the standards of "good cause" under 21 V.S.A. § 1344(a)(2)(A) to the terms of the union contract.

The labor contract between the United Steel Workers of America, AFL–CIO, and the City of Barre provides that the union is the exclusive bargaining representative regarding conditions of employment for Barre's custodial employees. The contract sets forth an explicit grievance procedure, calling first for an oral complaint within three days by the union steward to the employee's immediate supervisor. If not settled, the grievance must be submitted in writing, within three days of adverse response, to the employee's department head. The third step, again in writing, is to the city manager. From there, the complaint goes to the city council, and ultimately to arbitration. After being rebuffed by Hermann, Garcia did indeed approach his union representative, and when she did not present an oral complaint to Garcia's immediate supervisor (Hermann), he carried his grievance to a union official possessed of more authority. However, that union official also made no complaint to the city; instead, he instructed Garcia to resign for "personal reasons" and drafted the resignation letter.

Whether a resignation is for good cause attributable to the employer is a matter within the special expertise of the

Employment Security Board, and its decision is entitled to great weight on appeal. *Cook* v. *Department of Employment & Training,* 143 Vt. 497, 501, 468 A.2d 569, 571 (1983); *Allen* v. *Department of Employment Security,* 141 Vt. 132, 134, 444 A.2d 892, 893 (1982). Here, the Board concluded that notice required before a claimant has "good cause" to quit is not determined by the union contract. We agree.

Failure to follow a grievance procedure should not necessarily deprive a claimant of potential unemployment benefits. See *Stonco Electric Products Co.* v. *Board of Review,* 106 N.J. Super. 6, 9–10, 254 A.2d 111, 113–14 (N.J. Super. App. Div. 1969) (construing a New Jersey statute which disqualifies a claimant who "has left work voluntarily without good cause attributable to such work"). The employer's principal argument in *Stonco* was that "a quit cannot be for 'good cause' if no attempt has been made to use existing grievance procedures . . . and that grievance procedures . . . are administrative steps which must be exhausted before unemployment benefits may be sought." *Id.* at 9, 254 A.2d at 113. The New Jersey court agreed that failure to press the rights under grievance procedures is relevant evidence in assessing "good cause," but it held that exhaustion of grievance procedures was not a prerequisite for an unemployment claim. *Id.* at 10, 254 A.2d at 113. Noting that the statute made no reference to collective bargaining, the court held that grievance procedures and unemployment compensation remedies are concurrent, and failure to exercise one is not conclusive of the other. *Id.* at 11, 254 A.2d at 114.

A dispute over rights and responsibilities under a union contract may involve issues similar to those in unemployment claims, but the contract is not state law, and the statutory purposes must prevail. Vermont's unemployment compensation statutes are benevolent, serving the "express goal of removing economic disabilities." *Jenkins* v. *Department of Employment Security,* 135 Vt. 210, 212, 373 A.2d 533, 534 (1977). They do not exclude a claimant "unless the Act itself reveals a clear intention to make such an exclusion." *Id.* The statutes were not enacted primarily to protect employer reliance upon union grievance procedures, but, rather, to protect employees from "economic disabilities and distress resulting

from involuntary unemployment." *In re Platt,* 130 Vt. 329, 331, 292 A.2d 822, 824 (1972). Moreover, Title 21 makes no reference to union contract grievance procedures. We therefore hold that failure to follow grievance procedures in seeking redress, while relevant to the validity of a claim, does not necessarily disqualify a claimant from benefits under the statute.

■ Arguing that employers are entitled to rely on union contract grievance procedures, the Trust points out that the union's acts and omissions were "not the employer's fault." However, the union's missteps are not automatically attributable to the employee either. Where "good cause" exists and the union may be at fault for not following established procedures, a claimant should not be relegated by the force of 21 V.S.A. § 1344(a)(2)(A) to the more uncertain remedy of a civil suit against the union for damages.

## II.

The Trust also argues that Garcia's inability to convince City Manager Hermann of his veracity during the few moments before he was ordered out of the office establishes that the city was not sufficiently informed of his problem and therefore was given no opportunity to correct it.

The Trust cites decisions in which claimants who refused to discuss their grievances with employers were held not to have made reasonable attempts to stay on the job. See *Glennen* v. *Employment Division,* 25 Or. App. 593, 595–96, 549 P.2d 1288, 1289 (Or. Ct. App. 1976) ("in order to have good cause for leaving work, an employe with grievances about employment must indicate an effort to work out the problems unless the employe can demonstrate that such effort would be futile") ; *Colduvell* v. *Unemployment Compensation Board of Review,* 48 Pa. Commw. 185, 187, 408 A.2d 1207, 1208 (Pa. Commw. Ct. 1979) (although good cause existed, where claimant did not give owners "opportunity to understand the nature of her objection, before resigning," she did not satisfy legal requirement of reasonable attempt to stay on the job) ; see also *Dunton* v. *Department of Employment Security,* 136 Vt. 483, 484, 394 A.2d 1129, 1130 (1978) (claimant's disqualification affirmed: "No effort to change working terms or conditions

was shown, and there is no showing that such effort would have been unavailing.").

These cases, however, are not analogous. *Glennen* and *Dunton* both dealt with a failure by the employee to show either that he tried to change unsatisfactory working conditions or that such an effort would have been futile. In *Colduvell, supra,* 48 Pa. Commw. at 187, 408 A.2d at 1208, the claimant approached her employer, but he was too busy to see her at that particular time. The Pennsylvania Commonwealth Court denied her benefits because she "fail[ed] to indicate the nature of the problem" to her employer, holding that this fell short of the legal requirement of a "reasonable attempt to stay on the job." *Id.*

In contrast, in the case before us, Garcia expressly told the city manager about the thievery before he was rebuffed. His efforts, and his supervisor's brusque reaction, distinguish this case from those involving a claimant's failure to contact the employer prior to quitting. Any shortcoming in the opportunity given Garcia to establish his veracity is attributable to Hermann's peremptory handling of the complaint. An employee can be required to do no more than make a reasonable effort, as Garcia did, to bring his grievance to the attention of his employer. The evidence supports the Board's finding that the employer was given due notice under the circumstances.

*Affirmed.*