203 N.J. Super. 241 (1985)
496 A.2d 720
CHRISTINE E. DOERING, APPELLANT,
v.
BOARD OF REVIEW AND NEW JERSEY DEPARTMENT OF CORRECTIONS, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1985.
Decided July 18, 1985.
*243 Before Judges MICHELS, PETRELLA and BAIME.
Nathanya G. Simon argued the cause for appellant (Schwartz, Pisano & Simon, attorneys; Ms. Simon, of counsel and on the brief).
Todd G. Wigder, Deputy Attorney General, argued the cause for respondents Board of Review and Department of Corrections (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; Michael S. Bokar, Deputy Attorney General, of counsel; Antoinette Bennett, Deputy Attorney General, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Claimant Christine E. Doering appeals from a final decision of the Board of Review (Board) that affirmed the decision of the Appeal Tribunal holding that she was disqualified from receiving unemployment compensation benefits and liable for a refund of benefits paid during the period of such disqualification.
Claimant left her employment with respondent New Jersey Department of Corrections as an assistant social worker supervisor in the Genesis Program. She filed a claim for benefits under the New Jersey Unemployment Compensation Law alleging that she was sexually harassed, subject to racially prejudicial comments, and threatened with physical harm by Philip Hill (Hill), her immediate supervisor and the superintendent of the Genesis Program, and that she left her position because she *244 could not work under such circumstances. The deputy in the local claims office of the Division of Employment Security held her qualified for unemployment compensation benefits concluding, in part, that "[b]ased upon all available information, your refusal to continue working was with good cause." The appeals examiner, after hearing testimony from claimant as well as Hill and Charles Akers (Akers), the regional coordinator of the Genesis Program, disagreed, finding, in part, that:
[t]he claimant did not get along well with her supervisor. She resented personal comments upon her taste in music, discussions of her or her supervisor's social life, and their interactions when traveling to other locations. The supervisor yelled at the claimant and other workers. The claimant refused to perform various tasks assigned by her supervisor as she felt they were clerical functions. On occasion she declined by yelling at him. The supervisor did call the claimant at home and on more than one occasion staff meetings were held at the supervisor's house. On one occasion at his home he asked her to fry him some eggs. The claimant refused and the supervisor made the eggs himself. On one occasion when going for lunch the supervisor commented in a joking manner "let the white chick sit in the back."
* * * * * * * *
The supervisor did not sexually molest the claimant. The claimant did not complain about sexual advances to the supervisor's supervisor. He made no serious sexual advances to the claimant.
The appeals examiner concluded that:
[t]he claimant made no real effort to correct the alleged incident of sexual harassment. She did not present them to the supervisor or file a grievance against the supervisor.... There were no substantial incidents of sexual harassment or sexual intimidation. The claimant herself did not pursue any complaints of this nature. The claimant and her supervisor did not relate to one another in a reasonable manner. The working conditions and the supervisor's attitude toward her were not so bad as to compel her to leave. The claimant did not have good cause attributable to the work for leaving.
The appeals examiner accordingly held that claimant was disqualified from receiving unemployment benefits as of May 27, 1982, for voluntarily leaving her position without good cause attributable to her work in accordance with N.J.S.A. 43:21-5(a). Claimant appealed to the Board, which affirmed the decision of the Appeal Tribunal on the record below. This appeal followed.
Claimant contends essentially that the evidence fails to support the findings of the Appeal Tribunal that she did not *245 have good cause for voluntarily leaving her employment and that benefits should be restored to her as a matter of law. Although we appreciate the deference that we are obligated to accord administrative agency factfinding, see Bradley v. Henry Townsend Moving & Storage Co., 78 N.J. 532, 534-535 (1979); Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 92-93 (1973); Close v. Kordulak Bros., 44 N.J. 589, 599 (1965); Condo v. Board of Review, 158 N.J. Super. 172, 174 (App.Div. 1978); Associated Utility Service v. Bd. of Review, 131 N.J. Super. 584, 588 (App.Div. 1974), our review of the record persuades us that claimant had good cause for voluntarily leaving work by reason of the continued sexual harassment, gender biased and racially prejudicial comments, and threats of physical harm made to her by her supervisor, Hill. We therefore conclude that she was entitled to unemployment compensation benefits.
The New Jersey Unemployment Compensation Law N.J.S.A. 43:21-5(a) provides, in pertinent part, that an individual shall be disqualified from receiving benefits:
[f]or the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual has earned in employment * * * at least 4 times his weekly benefit rate, as determined in each case.[1]
While the statute does not define "good cause," our courts have construed the statute to mean "cause sufficient to justify an employee's voluntarily leaving the ranks of the employed *246 and joining the ranks of the unemployed." Associated Utility Services, supra, 131 N.J. Super. at 586 (quoting Goebelbecker v. State, 53 N.J. Super. 53, 59 (App.Div. 1958). See Condo v. Board of Review, supra, 158 N.J. Super. at 174; see also Zielenski v. Bd. of Rev., Div. of Emp. Sec., 85 N.J. Super. 46, 52 (App.Div. 1964); Morgan v. Bd. of Review, Div. of Employ. Sec., 77 N.J. Super. 209, 213 (App.Div. 1962). In Krauss v. A. & M. Karagheusian, 13 N.J. 447 (1953), our Supreme Court, discussing the meaning of "good cause" as used in N.J.S.A. 43:21-5(a) prior to the Legislature's amending the statute in 1961 to require that good cause for voluntarily leaving be "attributable to such work," commented:
The Legislature contemplated that when an individual voluntarily leaves a job under the pressure of circumstances which may reasonably be viewed as having compelled him to do so, the termination of his employment is involuntary for the purposes of the act. In statutory contemplation he cannot then reasonably be judged as free to stay at the job. [Id. at 464].
In our view sexual harassment, racially prejudicial and gender biased comments, and threats of physical violence directed to an employee are abnormal working conditions and constitute good cause for that employee to voluntarily leave her employment. See Condo v. Board of Review, supra, 158 N.J. Super. at 175; Associated Utilities Services v. Bd. of Review, supra, 131 N.J. Super. at 587; Fried v. Ross, 54 A.D.2d 521, 386 N.Y.S.2d 245, 246 (App.Div. 1976); Stevenson v. Morgan, 17 Or. App. 428, 522 P.2d 1204, 1206 (1974). Sexual harassment, racially prejudicial and gender biased comments, and threatened physical violence cannot be condoned in any place of employment and certainly cannot be tolerated in the public sector.
Although the appeals examiner found that "the working conditions and the supervisor's attitude toward her were not so bad as to compel her to leave," such findings lack support in the record and stand in stark contrast to the fact that the appeals examiner obviously concluded that claimant was subjected to sexual harassment. Implicit in the appeals examiner's *247 findings and conclusions is the fact that there was some sexual harassment and sexual intimidation. Such finding is supported by the record. Claimant testified that in the beginning of her employment she got along well with supervisor Hill with "the exception of references to after hour activities with him, what I think of having [an] `affair' with my boss, references like that." She testified that sexual connotations were made to her from the beginning of her employment and that Hill in fact asked her how she "would feel about having a sexual relationship with him." Additionally, Hill made a sexual advance to her and on one occasion while in a judge's chambers, which was being used for a temporary office, he placed his hands around her waist and caressed her breasts. Claimant also testified that Hill once threatened to slap her and that while they were attending a meeting one day he kicked her whenever he wanted her to take notes. She testified that as a result of being kicked she became bruised. According to claimant, Hill called her names and yelled at her a great deal. He called her at home many times and left messages on her answering service.
Moreover, claimant testified that on one occasion, when they were going to lunch with another employee, Hill said, "Let the white chic [sic] sit in the back seat," and that on another occasion when claimant arrived at Hill's house to work on a Sunday morning he told her to cook eggs for him and she refused. Although Hill denied that he ever did or said anything to claimant having sexual connotations and denied that he put his hands on her, the inference is inescapable that there were incidents of sexual harassment and the appeals examiner implicitly recognized this to be the fact. Thus, when the incidents of sexual harassment and intimidation to which claimant was subjected by Hill are considered in light of both the admitted racially prejudicial comment, "Let the white chic [sic] sit in the back seat" and the unrefuted gender biased comment by Hill asking claimant to cook eggs for him, there cannot be any question that claimant had good cause attributable to her work for leaving.
*248 Consequently, we are thoroughly convinced that the appeals examiner's decision to the contrary which was affirmed by the Board was clearly mistaken and so plainly unwarranted that the interests of justice demand intervention and correction. We hold to a definite conviction that the appeals examiner and the Board "went so wide of the mark, a mistake must have been made." State v. Johnson, 42 N.J. 146, 162 (1964). "`[W]e are convinced [that the factual findings and legal conclusions of the appeals examiner adopted by the Board] are so manifestly unsupported by [and] inconsistent with the competent, relevant and reasonably credible evidence [that they] offend the interests of justice. [Citation omitted].'" Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. North Bergen Tp., 78 N.J. Super. 154, 155 (App.Div. 1963)). See also Bruenn v. Switlik, 185 N.J. Super. 97, 108 (App.Div. 1982), certif. den., 91 N.J. 536 (1982); Formosa v. Equitable Life Assurance Society, 166 N.J. Super. 8, 20 (App.Div. 1979), certif. den., 81 N.J. 53 (1979).
Furthermore, claimant's failure to take additional steps, such as pursuing a formal grievance against Hill or filing a civil rights suit in the State or Federal court to vindicate the wrong done to her did not provide a valid basis for disqualifying her from receiving unemployment compensation benefits. Claimant's responsibility was merely to do what was necessary and reasonable in order to remain employed. See Zielenski v. Bd. of Rev., Div. of Emp. Sec., supra, 85 N.J. Super. at 53-54. "Claimant here did not have to do everything possible to maintain intact the employer-employee relationship", including continuing to expose herself to sexual harassment, racially prejudicial and gender biased comments, or the threat of physical harm. While her failure to complain further after her meeting with Akers or to explain in detail about the sexual harassment, the racial slurs, the gender biased comments or to take formal action after her meeting with Frank Gripp, the Deputy Director of the Division, may be relevant and probative on the bona fides of her claim, it certainly does not in and of *249 itself disqualify her from receiving benefits nor does it prove that the reason she quit was not sufficient to constitute "good cause attributable to such work". See Condo v. Board of Review, supra, 158 N.J. Super. at 175; Stonco v. Bd. of Rev., Div. of Emp. Sec., 106 N.J. Super. 6, 10 (App.Div. 1969).
Accordingly, the final decision of the Board affirming the decision of the Appeal Tribunal on the record before the appeals examiner is reversed and the matter remanded for a determination on the unemployment compensation benefits to be paid claimant. We do not retain jurisdiction.
NOTES
[1] Subsequent to the Board of Review's decision on March 2, 1983, the Legislature amended N.J.S.A. 43:21-5(a) so as to modify the criteria with which an individual who has left work voluntarily must comply to re-qualify for unemployment benefits. See L. 1984, c. 24, § 3, effective October 1, 1984. N.J.S.A. 43:21-5(a) now provides that:

An individual shall be disqualified for benefits:
(a) For the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual becomes reemployed and works four weeks in employment, which may include employment for the federal government, and has earned in employment at least six times the individual's weekly benefit rate, as determined in each case.