## Jacqueline C. Allen v. Department of Employment and Training

[618 A.2d 1317]

No. 91-260

Present: **Allen, C.J., Gibson, Dooley and Morse, JJ., and Peck, J. (Ret.), Specially Assigned**

Opinion Filed October 16, 1992

*Jean Anne Kiewel* of *Hertz and Wesley*, Brattleboro, for Plaintiff-Appellant.

*J. Eric Anderson* of *Cantini, Anderson & Oakman*, Manchester Center, for Defendant-Appellee Vermont Academy.

*Brooke Pearson*, Montpelier, for Defendant-Appellee Department of Employment & Training.

**Morse, J.** The Employment Security Board denied plaintiff unemployment benefits because, before quitting her job, she did not give notice to her employer's business manager or someone in similar authority that she was being sexually ha-

rassed by her supervisor. Plaintiff appealed. We reverse and remand.

Plaintiff worked at Vermont Academy as a secretary for the housekeeping and maintenance departments. From December 1989 to April 1990, plaintiff alleged, and the Board expressly found, that one of plaintiff's two supervisors, the head of maintenance, made sexual advances toward her on at least three occasions. The first incident occurred in December 1989, when the supervisor grabbed plaintiff and kissed her. Plaintiff informed no one of the incident. Several days later the supervisor apologized and stated that it would not happen again. In January 1990, the supervisor asked plaintiff for a New Year's kiss, and plaintiff objected. He later apologized and made another promise to stop the conduct. In April 1990, however, the supervisor for a third time insisted that she kiss him. Plaintiff refused, pushed the supervisor away, and left. Finally, in August 1990, the supervisor requested that plaintiff accompany him to the gym basement to take inventory. Although plaintiff agreed to perform the task, she refused to do so in the isolated basement. No incidents occurred during the inventory; however, plaintiff, claiming she feared further unwanted sexual advances, shortly thereafter quit her job.

Several days later plaintiff wrote a letter to the supervisor in which she demanded that the harassment stop and stated that she wanted to return to work. He allowed her to return, but within a short period of time the supervisor became "very friendly" again, although no unwanted sexual contact or comments occurred. Plaintiff, believing that the harassment would recommence, quit for good in October 1990.

Except for one occasion, plaintiff never personally complained, by formal grievance or otherwise, to anyone other than the offending supervisor. The Board found that plaintiff, after returning to work in September 1990, informed the head of housekeeping that the head of maintenance had attempted to kiss her, to which she objected. Vermont Academy's business manager, the offending supervisor's superior, had not been told by anyone of the offending behavior toward plaintiff.

The Academy did not submit in evidence a personnel policy or grievance procedure at the hearing. Instead, it presented the testimony of the head of housekeeping at the Academy. She

stated that she had been aware of a posted personnel policy but she was unsure whether it outlined a grievance procedure in general or one specifically addressing complaints of sexual harassment. She believed that if a problem arose, the necessary procedure would be to file a complaint with the immediate supervisor. Plaintiff also testified that she had never received a copy of the policy, nor did she know that a policy existed.

The Board concluded that plaintiff had not met her burden in showing that she had good cause to quit which was attributable to her employer. Critical to its determination was the finding that the business manager had no knowledge of the harassment. Because the business manager, and therefore Vermont Academy as the employing unit, was without notice or opportunity to remedy the problem, the Board denied plaintiff benefits.

As the trier of fact, the Board's factual findings and conclusions will not be disturbed by this Court if they are supported by credible evidence. *Favreau v. Department of Employment & Training*, 156 Vt. 572, 577, 594 A.2d 440, 443 (1991). If the findings of fact do not support the Board's determination under the applicable law, that judgment will not be upheld on review. In this case, the Board's findings of fact do not support its determination that the plaintiff's reason for quitting was not "attributable to" the employer. We conclude that actual notice to a person superior to the offending supervisor was not required.

A person is disqualified from receiving unemployment benefits if she voluntarily terminates employment "without good cause attributable to [the] employing unit." 21 V.S.A. § 1344(a)(2)(A). This two-pronged standard requires a showing of a sufficient reason to justify the quit, *Stryszko v. Department of Employment & Training*, 144 Vt. 198, 199, 475 A.2d 230, 231 (1984), and that the reason be "attributable" to the employing unit. *Vennell v. Department of Employment Security*, 141 Vt. 282, 283, 449 A.2d 899, 900 (1982).

An employee who is harassed on the job by a coworker may have "good cause" to quit. *Turco v. Department of Employment Security*, 141 Vt. 135, 138, 446 A.2d 345, 347 (1982). Federal law prohibiting discrimination in the workplace, Title VII of the Civil Rights Act of 1964, defines conduct that consti-

tutes sexual harassment. See 42 U.S.C.A. §§ 2000e–2000e-17. "Hostile-environment" sexual harassment occurs when a worker is subjected to unwelcome sexual advances, thereby creating an offensive working atmosphere. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 64-67 (1986) ("hostile-environment" sexual harassment occurs when employee is subjected to "discriminatory intimidation, ridicule, and insult" due to her sex). Such harassment is illegal even though no tangible job benefit is implicated, such as a termination, demotion or loss of promotion in retaliation for refusing to submit to the unwelcome advances. *Id.* at 65.

The Board expressly found that the incidents of sexual harassment complained of actually occurred and that plaintiff "quit her job . . . because she was afraid that her supervisor . . . would resume his harassment of her." The Board, however, did not make a finding that the second quit due to fear of plaintiff's supervisor in October 1990 was reasonable in light of the fact that no incidents had occurred since April 1990.

 In deciding the case, the Board focused primarily on the second prong of the test—that the good cause was "attributable" to the employer. This requires that the cause of termination not be the fault of the employee or attributable to the employee's own conduct. *Vennell*, 141 Vt. at 283, 449 A.2d at 900. Generally, notice to the employer is required when an employee leaves a job for unsatisfactory working conditions so that the employer has an opportunity to rectify the situation before becoming responsible for unemployment compensation payments. *Rushlow v. Department of Employment & Training*, 144 Vt. 328, 331, 476 A.2d 139, 141 (1984). In the context of sexual harassment, however, notice to the employer is problematic. Women, understandably, may not complain about sexual harassment in the workplace out of fear of not being believed, embarrassment about making it known, and fear of reprisals. Nevertheless, the sexual harassment victim is "precisely the type of claimant unemployment compensation benefits are designed to assist: a worker who is committed to working yet finds her present working conditions intolerable." *Unemployment Compensation Benefits for the Victim of Work-Related Sexual Harassment*, 3 Harv. Women's L.J. 173, 187, 195 (1980).

The standard of employer liability in sexual harassment cases under Title VII, and the question of what constitutes notice to the employer, is still a matter of debate. The United States Supreme Court has declined to set forth a definitive rule on the issue, stating only that:

Congress wanted courts to look to agency principles for guidance in this area. While such common-law principles may not be transferable in all their particulars . . . [the] decision to define "employer" to include any "agent" of an employer . . . surely evinces an intent to place some limits on the acts of employees for which employers . . . are to be held responsible. . . . [A]bsence of notice to an employer does not necessarily insulate that employer from liability.

*Meritor*, 477 U.S. at 72.

Other courts, taking guidance from agency principles, have held that knowledge may be imputed to the employer in situations where "the harassment took place at the office, during working hours and was carried out by someone with the authority to hire, fire, promote and discipline" the employee. *Yates v. Avco Corp.*, 819 F.2d 630, 636 (6th Cir. 1987); *Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77, 81 (3d Cir. 1983) (knowledge may be imputed where offending employee had "unbridled authority to retaliate" against harassed employee). This approach is in general accord with the Restatement (Second) of Agency § 219(2)(d) (1958), which provides that employers are liable for tortious acts of their servants even though the actions were outside the scope of employment. Where the employee "purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation," the employer is not insulated from liability. *Id.* Where a supervisor has broad powers over employment decisions, therefore, that supervisor functions as agent for the employer, the principal.

■ Although cases under Title VII are helpful in our analysis, we recognize that the definition of employing unit under the Unemployment Compensation Act, 21 V.S.A. § 1301(4), does not include "agent" of the unit, as Title VII does. The nature of sexual harassment in the workplace, however, and the liberality we must afford our interpretation of the Act, *Howard v. De-*

*partment of Employment & Training*, 153 Vt. 614, 616, 572 A.2d 931, 932 (1990), cause us to conclude that a claimant who fails to report sexual harassment before quitting her job or giving the employer an opportunity to remedy the harassment is not automatically precluded from receiving benefits.

■ We need not decide at this time whether an employer may be held strictly liable for acts of harassment in the workplace. We conclude that no further notice to the employment unit was required in this case to warrant benefits, because the facts here show the employer did not have an adequate process in effect to instruct an employee who is sexually harassed by a supervisor what to do.

In *Hussa v. Employment Security Dep't*, 34 Wash. App. 857, 664 P.2d 1286 (1983), the claimant was harassed by a coworker, and did not inform her employer of the harassment until shortly before she quit. Under a compensation statute similar to Vermont's, the employee was found entitled to benefits because the offending behavior had created a "genuine apprehension and fear . . . in the mind of an ordinarily prudent woman," and thus she "was not required to await the employer's attempt to remedy the situation." *Id.* at 864, 664 P.2d at 1290. See also *Doering v. Board of Review*, 203 N.J. Super. 241, 248, 496 A.2d 720, 724 (1985) (worker subjected to sexual and racial harassment by supervisor not required to file formal grievance or civil rights suit, nor expose herself to continuing harassment before quitting in order to qualify for unemployment benefits). Here, notwithstanding the finding that plaintiff did not inform anyone superior to her immediate supervisor of the harassment, the evidence is that the harassing supervisor was in a position of sufficient authority to hire and fire her and there was no effective policy at the school to deal with sexual harassment under those circumstances.

■ The availability and effectiveness of a grievance procedure for incidents of harassment is relevant in hostile-work-environment claims. The "mere existence" of a policy prohibiting discrimination and a grievance procedure, coupled with the failure to invoke such procedure, does not necessarily insulate an employer from liability. The United States Supreme Court found those facts not dispositive where the policy "did not ad-

dress sexual harassment in particular, and thus did not alert employees to their employer's interest in correcting that form of discrimination." *Meritor*, 477 U.S. at 72–73. The *Meritor* policy required an employee to complain first to her supervisor, the person who had been sexually harassing her. The Court found "it [was] not altogether surprising that [the complainant] failed to invoke the procedure and report her grievance to him." *Id.* at 73; see also *Garcia v. Department of Employment & Training*, 145 Vt. 331, 335, 488 A.2d 762, 764–65 (1985) (failure to invoke a grievance procedure should not automatically deprive a claimant of unemployment benefits); *Dunton v. Department of Employment Security*, 136 Vt. 483, 484, 394 A.2d 1129, 1130 (1978) (voluntary quit "attributable to employer" if claimant shows efforts to resolve situation would have been unavailing).

Vermont Academy's grievance procedure, if any, was not introduced in evidence, and the only witness who testified about a posted personnel policy did not know if it included a procedure for instituting complaints of sexual harassment. Because plaintiff testified that she neither received nor knew such a procedure existed, and because the Academy offered no evidence sufficient to rebut her testimony, no finding could be made that an adequate mechanism existed to deal with sexual harassment. See *St. Barnabas, Inc. v. Unemployment Compensation Board*, 106 Pa. Commw. 191, 196, 525 A.2d 885, 888 (1987) ("where a mechanism is in place to deal with [harassment] and is known to [the] [c]laimant," she must make a good faith effort to employ that mechanism in an effort to solve her problem).

If a grievance procedure or policy was in effect, there was no evidence Vermont Academy made such policy known or available to its employees. See *Meritor*, 477 U.S. at 73 (grievance procedure might insulate employer from liability if "better calculated to encourage victims of harassment to come forward"); *Yates*, 819 F.2d at 635 (although policy existed, it was "vague on paper . . . vague and ad hoc in its implementation and did not function effectively"). Plaintiff should not be expected to adhere to, nor should an employer be shielded from liability by, a procedure which is not sufficiently disseminated by the employer to employees.

We reverse the Board's conclusion that sexual harassment could not be "attributable" to Vermont Academy because of

lack of notice. We remand, however, for the Board to make a decision on whether plaintiff quit for good cause given the circumstances existing in October 1990.

*Reversed and remanded.*