633 So.2d 36 (1994)
Fran T. BROWN, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION and Jacobs and Goodman, P.A., Appellees.
No. 93-637.
District Court of Appeal of Florida, Fifth District.
February 4, 1994.
Rehearing Denied March 14, 1994.
*37 Thomas P. Moran and Kelly T. Blystone, Subin, Shams, Rosenbluth, Moran, Losey & Brennan, P.A., Orlando, for appellant.
Robert W. Thielhelm, Jr. of Baker & Hostetler, Orlando, for appellee Jacobs & Goodman, P.A.
No appearance for appellee Unemployment Appeals Com'n.
EN BANC
COBB, Judge.
The appellant, Fran Brown, appeals the affirmation by the Unemployment Appeals Commission of the decision of the appeals referee denying her claim for unemployment benefits. Brown was a legal assistant at an Orlando law firm, where she was sexually harassed by a male coworker over a period of some five months. She did not report this to her employers.[1] When they learned of it through another employee, they met with Brown and then placed her on paid administrative leave. Several days thereafter, they advised Brown they wanted her to return to work and would change her work location to the firm's main building. The administrator of the law firm, the harasser's wife, worked in the main building. Brown refused to return to work based upon the presence of the harasser's wife and upon the advice of her attorney and her psychologist. Brown said she would have refused to return to work even if the harasser was not permitted to be near her. She also felt she could not work around the harasser's wife, even though the latter was without fault. Brown was asked to cooperate in the investigation conducted by the employer, and refused to do so  again, on advice of counsel. She quit her job after her leave of absence expired.
Based on the foregoing facts, the referee arrived at the following "Conclusions of Law":

CONCLUSIONS OF LAW: The unemployment compensation law provides that a claimant who has voluntarily left work without good cause or has been discharged by the employing unit for misconduct connected with the work shall be disqualified from receiving benefits.
The record and evidence in this case show that the claimant quit her job when she *38 refused to return to work after her leave of absence was over.
The law further provides that a claimant who has voluntarily left work without good cause as defined in the statute shall be disqualified from receiving benefits. "Good cause" includes only such cause as is attributable to the employing unit or which consists of an illness or disability of the claimant requiring separation from the work.
The record and evidence in this case show that the claimant voluntarily quit her job when she refused to return to work after a leave of absence.
When an individual leaves work voluntarily, as the claimant did, she carries the burden to show that her leaving was with good cause attributable to the employer, in order to qualify for unemployment compensation benefits. That burden has not been met in this case.
There was no evidence that the employer had any idea that the claimant was a victim of unwelcome sexual advances until the end of January 1992. The claimant told several family members, two girlfriends, and two co-workers. The claimant never told anyone in authority that she was being sexually harassed. It appears obvious that the only way that the employer knew of the situation was because the claimant told a co-worker, who apparently told the claimant's supervisor. The claimant acknowledged the situation when confronted. The employer immediately placed the claimant on a paid leave of absence for several days, in order for them to investigate the claimant's allegations. The employer asked the claimant to cooperate with the investigations, one of which was an outside investigation. The claimant refused to cooperate in any investigation conducted by the employer. The employer moved the claimant's work location to another building, but the claimant found this to be unacceptable because the harasser's wife worked there. The claimant stated at the hearing that even if the harasser would have no access to her, she still could not return to the work place because the harasser's wife worked there. The claimant further testified that the harasser's wife had no knowledge of the events, and had not caused the claimant any harm. The claimant determined that the employer's offer to remedy the situation was inadequate, and she refused to work in the new location.
The employer was entitled to a reasonable amount of time to investigate the situation, and determine if the claimant's allegations were true. The claimant speculated that the employer's remedy would not work. The claimant failed to act as a reasonable person in attempting to preserve the employer/employee relationship. Therefore, it can only be concluded that the claimant voluntarily quit her job without good cause attributable to the employer, and she is disqualified from the receipt of benefits.
The law is clear that an employee who voluntarily leaves her employment without good cause attributable to her employer is not eligible to receive unemployment compensation benefits. See § 443.101(1)(a), Fla. Stat. (1991). This subsection only protects workers of employers who wrongfully cause their employees to "voluntarily" leave their employment. Moore v. Florida Unemployment Appeals Comm'n, 498 So.2d 992 (Fla. 1st DCA 1986); Home Fuel Oil Co., Inc. v. Florida Unemployment Appeals Comm'n, 494 So.2d 268 (Fla. 2d DCA 1986). The burden below was on the claimant, Brown, to show that her voluntary departure from employment was attributable to the wrongful conduct of her employer, Jacobs and Goodman, P.A. See Marcelo v. Dep't of Labor and Employment Sec., 453 So.2d 927 (Fla. 2d DCA 1984). Clearly, as determined by the appeals referee and Unemployment Appeals Commission, she failed to meet that burden.
The "good cause" for voluntarily leaving employment focuses on whether the circumstances would have impelled the average, able-minded, qualified worker to give up her employment. Dean v. Florida Unemployment Appeals Comm'n, 598 So.2d 100 (Fla. 2d DCA), rev. denied, 605 So.2d 1268 (Fla. 1992). The standard is not that of the highly emotional, super sensitive employee. Ritenour v. Unemployment Appeals Commission, 570 So.2d 1106 (Fla. 5th DCA 1990). *39 In the instant case it is undisputed that Brown's employment was not terminated when she walked off the job. It was terminated only at that point in time when she refused to return to work after the situation which allegedly caused her departure had been corrected by the employer.
In affirming the denial of unemployment benefits to an employee who voluntarily left his employment, the Third District, in Perez v. State, Dep't of Labor and Employment Sec., 377 So.2d 806, 807 (Fla. 3d DCA 1979), succinctly stated the correct legal principle applicable to this case:
Our affirmance is based primarily upon the familiar principle that this court lacks authority to interfere with an administrative decision based upon an acceptable view of the evidence below. See Florida Industrial Commission v. Ciarlante, 84 So.2d 1 (Fla. 1955); Lundy's Market, Inc. v. Florida Department of Commerce, 373 So.2d 433 (Fla. 3d DCA 1979), and cases cited. We simply may not substitute our judgment for the referee's conclusion... .
See also Ritenour v. Unemployment Appeals Comm'n.
We affirm the lower tribunal.
HARRIS, C.J., and GOSHORN, PETERSON and THOMPSON, JJ., concur.
DAUKSCH, J., dissents with opinion, with which GRIFFIN and DIAMANTIS, JJ., concur.
GRIFFIN, J., dissents separately with opinion.
W. SHARP, J., recused.
DAUKSCH, Judge, dissenting.
Both the commission and the majority opinion have correctly stated the applicable law while misapplying it to this case.
The question on appeal, which is erroneously answered by the majority, involves the "good cause attributable to the employer" concept which is ingrained in the unemployment compensation law. The improper application of the concept coupled with the determination that this employee voluntarily left her job has lead the commission and the majority into their significant error.
An examination of the facts leads to the inescapable conclusion that this employee did not voluntarily leave her employment. It is obvious that the cause for her leaving was good cause, and as between the two, employer and employee, it was attributable not to her, but to her employer.
Appellant was employed at Jacobs and Goodman, P.A., a law firm, as a legal assistant from July 31, 1991 until January 30, 1992. Brown proved that a coemployee of Jacobs and Goodman, P.A., who takes personal injury calls and does maintenance on the weekends, sexually harassed her verbally on almost a daily basis and physically four or five times. The coemployee's office was on the same floor as Brown's workstation. The incidents were initially verbal. The coemployee stated that "he liked [her] ass," and "he would like to eat [her]." The first physical incident was in August or September when the coemployee touched her behind. Brown also testified that the coemployee rubbed her back, exposed himself to her and made sexual gestures with his tongue. On a Saturday afternoon in December, when both Brown and the coemployee were working, the coemployee stopped Brown by the doorway and pulled up her top and started to pull down her pants and pulled his penis out. Brown panicked and left as quickly as she could.
On January 30, 1992, the principal partners became aware of the allegations and asked Brown about the sexual harassment. They put Brown on four to five days paid leave of absence and indicated that they would hold her job open for a time but that if she did not return to work after the paid leave of absence, she would not get paid for the additional time off.
Brown spoke to the partners on Sunday, Monday and Wednesday of the following week about returning to work. They wanted to assign Brown to another attorney in the main building. The coemployee did not work in the main building but his wife did and Brown did not want to work in the same building as the coemployee's wife. Coemployee's wife is the firm administrator, responsible, *40 inter alia, for all personnel matters. Brown's psychologist advised her that she should not return to the work environment of Jacobs and Goodman, P.A., unless both the coemployee and his wife were no longer working for the law firm.
Approximately a month later Jacobs and Goodman, P.A. offered Brown the position of employment that she held before she took a paid leave of absence. Brown was not aware that the coemployee had been placed on a leave of absence and would, therefore, not be in the building. Brown refused to return to work because no matter where they put her, she would see the coemployee's wife on a daily basis. Brown did not return to Jacobs and Goodman, P.A., and applied for unemployment benefits while she searched for employment elsewhere.
Brown should not be disqualified from unemployment compensation benefits if she voluntarily left employment with good cause attributable to her employer. Section 443.101(1)(a); Krueger v. Unemployment Appeals Comm'n, 555 So.2d 1225, 1228 (Fla. 2d DCA 1989). Brown did leave employment for good cause. "Good cause" has been defined as a reason that would be deemed valid by reasonable men and women and that is not indicative of an unwillingness to work. Id. at 1228. Brown was willing to work but did not want to work in an environment where she had previously been subjected to sexual harassment and feared that she may again be subjected to sexual harassment by the coemployee or possibly harassment from his wife. Brown's reason for voluntarily leaving employment meets the definition of "good cause" and is attributable to her employer. Although Brown's employer did not condone the conduct that caused her to leave employment, the conduct can be attributed to her employer. An employer is responsible for the work environment in which the employees must work, so failure to provide Brown with a tolerable work environment is good cause for leaving employment attributable to the employer. Lovett v. Florida Unemployment Appeals Comm'n, 547 So.2d 1253, 1254 (Fla. 1st DCA 1989); Wilson v. Florida Unemployment Appeals Comm'n, 604 So.2d 1274 (Fla. 4th DCA 1992). In Lovett, the court found that the employer's failure to intercede in a dispute between appellant and a coemployee was sufficient to meet the good cause standard and avoid loss of unemployment compensation benefits. Lovett, 547 So.2d at 1254. In Wilson, the court found that the change in the employee's work hours was a material breach of an employment agreement and constituted good cause for leaving employment attributable to the employer. Wilson, 604 So.2d at 1274. If an employer either wilfully or negligently permits the workplace to become so intolerable so as to endanger the physical or emotional well-being of an employee, then that employee has every right to leave. Because Jacobs and Goodman, P.A., did not provide Brown with a safe, harassment-free work environment, she should be permitted to terminate employment voluntarily and still receive unemployment compensation benefits.
I would reverse the decision of the commission and remand for an award of unemployment compensation.
GRIFFIN and DIAMANTIS, JJ., concur.
GRIFFIN, Judge, dissenting.
In August, 1991, Fran Brown, who was employed as a legal assistant for the law firm of Jacobs and Goodman, P.A. ["Jacobs and Goodman"], became the victim of various acts of sexual battery and harassment in her workplace. The perpetrator of these repeated, overt, and disgusting acts was a male coemployee who was married to the firm's administrator. That these acts occurred was not disputed. Ms. Brown testified she endured these indignities because she was afraid that, if she complained, she would lose her job.[1] Her fears proved prophetic. When she confided in certain coworkers, they brought the matter to the attention of the firm's principals. Their response was to give her three days' paid leave, after which they merely offered to move her to another building, which was away from the harasser, but in the same work area as the harasser's wife. When she declined to return to work under those circumstances, Jacobs and Goodman *41 successfully defeated her effort to obtain unemployment compensation on the ground that her decision not to continue working there was not "attributable" to her employer.
It will no doubt surprise many people to learn that if they are battered by a coemployee, they cannot quit their jobs and collect unemployment for that reason. The Unemployment Appeals Commission and the majority opinion in this case make clear that the employee has a duty to "preserve the employer/employee relationship" by putting the employer on notice of the coemployee's battery and by giving the employer a chance to take measures to prevent the offense from recurring. The majority opinion does not single out sexual harassment as a species of assault or battery of lesser concern than any other. There is no suggestion that a non-consensual sexual touching is qualitatively different than a punch in the mouth. According to the majority, no matter what the nature of the coemployee's attack, whether assault, mayhem, rape, attempted murder or sexual harassment, it cannot be "attributable to the employing unit," permitting the victim to quit and collect unemployment compensation, if the employer isn't on notice that the employee is at risk.
As Judge Dauksch has expressed, the majority is led into this error by incorrectly equating "attributable to the employer" with "wrongful conduct" by the employer. The issue is not whether the employer's conduct was "wrongful" in the tort sense, but simply whether the cause for leaving is "attributable to the employer" as opposed to being "attributable to the employee." "The Unemployment Compensation law is to be liberally construed in order to achieve its declared purpose of providing relief to persons not employed through no fault of their own." Dean v. Florida Unemployment Appeals Comm'n, 598 So.2d 100, 101 (Fla. 2d DCA), rev. denied, 605 So.2d 1268 (Fla. 1992). However, if "fault" is necessary to demonstrate that good cause to quit was attributable to the employer, this requirement seems fully satisfied by the fact that it was the employer who hired the harasser, who had the duty to supervise him and who had the duty to provide the victim with a safe workplace. This employer delegated his supervision to someone unwilling or unable to prevent his misconduct and who (evidently) did not detect this harasser's repeated and overt sexual acts in its workplace for a period in excess of five months. Ignorance of the fact that the workplace is dangerous ought not insulate the employer.
The rule the majority approves is that sexual harassment cannot be attributable to the employer (no matter how lax or willfully ignorant) until the employer is given notice of the harassment. The employee must give notice of the coemployee's battery and then keep working long enough to show either that the employer would not take measures to prevent reoccurrence or that it happened again. Such a rule encourages ignorance and passivity on the part of employers and results in the tacit intimidation of victims, who are afraid of losing their jobs.
While I certainly agree with the majority that sexual harassment should not be treated with any less dignity than any other battery committed by a coemployee in the workplace, sexual harassment may, in fact, be entitled to greater dignity in the context of statutory remedies such as workers' compensation and unemployment compensation. In Byrd v. Richardson-Greenshields Securities, Inc., 552 So.2d 1099, 1102-1104 (Fla. 1989), the court considered the question whether workers' compensation immunity was available to an employer in a context where female employees were sexually harassed by coemployees. The Byrd court reviewed the plethora of statutory and rule provisions that express the strong public policy against workplace sexual harassment. The supreme court said:
The clear public policy emanating from federal and Florida law holds that an employer is charged with maintaining a workplace free from sexual harassment.... While workplace injuries rob a person of resources, sexual harassment robs the person of dignity and self-esteem.
552 So.2d at 1104. [Emphasis added]. Sexual harassment, thus, has been made the direct responsibility of the employer as a matter of public policy. Professional Tel. Ans. Serv., Inc. v. Groce, 632 So.2d 609 (Fla. 2d DCA 1993). As a matter of public policy, *42 the employer is not allowed to plead ignorance. If this public policy is so strong that it abrogates the worker's compensation immunity, thereby exposing the employer to tort damages for breach of its duty to provide the employee with a workplace free of sexual harassment, then, surely, an act of sexual harassment in the workplace is "attributable to the employer" for purposes of unemployment compensation.[2]
There is yet a more moderate approach preferable to the majority's. Recently, the Vermont Supreme Court addressed this issue in Allen v. Department of Employment and Training, 618 A.2d 1317 (Vt. 1992). In that case, the Employment Security Board had denied plaintiff unemployment benefits because, before quitting her job, she did not give notice to her employer's business manager or someone in similar authority that she was being sexually harassed by her supervisor. Vermont's unemployment compensation statute is virtually identical to our own. 618 A.2d at 1319.
The Vermont court noted initially that an employee who is sexually harassed on the job by a coworker may well have "good cause" to quit. 618 A.2d at 1319. On the question whether quitting is "attributable to the employer" in the context of sexual harassment, the court observed that any requirement of notice to the employer is problematic. Victims are unlikely to complain due to fear of disbelief, the embarrassment of revealing the kinds of acts to which they have been subjected, and fear of reprisal. Id. "Nevertheless," said the court, "the sexual harassment victim is `precisely the type of claimant unemployment compensation benefits are designed to assist: a worker who is committed to working, yet finds her present working conditions intolerable'." Id. at 1319-20. The Vermont court concluded that an unemployment claimant who fails to give the employer an opportunity to remedy the harassment is not necessarily precluded from receiving benefits. 618 A.2d at 1320. The court determined that sexual harassment by a coworker will not be "attributable to the employer" only if the employer can show it has mechanisms in place that are calculated to protect the particular employee against sexual harassment. Id. at 1320. This might include having policies sufficient to alert employees to their employer's interest in preventing that form of discrimination and which are calculated to encourage victims of harassment to come forward. This approach has the salutary effect of encouraging an employer to take appropriate measures.
In the present record, the employer offered no evidence that it had made any effort to discourage sexual harassment, and the repeated and flagrant nature of this employee's conduct suggests there was little supervision exercised over the workplace in general and over this harasser in particular  not surprising in view of the fact that his own wife was his supervisor. Once Ms. Brown proved she had been sexually harassed in the workplace and the employer offered no evidence that it had taken reasonable measures calculated to prevent such attacks, there was "good cause" to quit, attributable to the employer.
The referee below also concluded that an employee is not entitled to "speculate" about the adequacy of the employer's proposed remedy and that this employee's refusal to give it a chance was not what a "reasonable person" would do. The majority concludes that Ms. Brown refused to return to work "after the situation ... had been corrected" by Jacobs and Goodman. But the employer's supposed correction and proposed remedy presented at least two problems. First, the harasser would still be, from time to time, and perhaps on Saturdays, in her workplace. Second, even if her fears of further attacks could have been so assuaged, the emotional trauma caused by the harassment would not abate, much less heal, in such an environment *43 She would have to work in a law firm where everybody knows what this man did to her, where he remained employed[3] and where his wife would be her supervisor. To say Ms. Brown's reluctance to return to work was "unreasonable" suggests the view that she suffered no "real" injury from these repeated sexual attacks that "reasonably" could affect her. Yet her psychologist advised against returning under the proffered conditions.
As this court and others in this state have repeatedly said, "good cause" for quitting are "those circumstances which would impel the average, able-bodied, qualified worker to give up his employment." The applicable standard is one of reasonableness applied to the average man or woman, not to the supersensitive, Uniweld Products, Inc. v. Industrial Relations Commission, Florida Department of Commerce, 277 So.2d 827 (Fla. 4th DCA 1973),[4] and this court can say what is reasonable and what is not. In Tannariello v. Federation of Public Employees, 437 So.2d 799 (Fla. 4th DCA 1983), the employee, "afraid" of future harm due to the location of her work environment, quit her job and sought unemployment. As in this case, the appeals referee in Tannariello called the employee's attitude "supersensitive" and found it was not attributable to the employer. The appellate court reversed the referee's decision, concluding that her fears met the legal test for "good cause" to quit. Given what happened to the victim in her workplace, I do not agree that her reluctance to return to work was "supersensitive;" the "good cause attributable to the employer" test is plainly met. See also Smalls v. State, Unemployment Appeals Comm'n, 485 So.2d 1 (Fla. 2d DCA 1985), rev. denied, 492 So.2d 1335 (Fla. 1986).[5]
I concur in the dissent of Dauksch, J., and would reverse the denial of unemployment compensation benefits.
NOTES
[1] Indeed, she remained actively on the job for more than 30 days after the culminating incident referred to in Judge Dauksch's dissent without any complaint to her employers.
[1] "[H]is wife is the firm administrator, she's the one that hires and fires."
[2] As expressed by the Supreme Court of Oregon:

The [unemployment compensation] statute does not demand as a matter of law that "an employee" sacrifice all other than economic objectives and, for instance, endure racial, ethnic, or sexual slurs or personal abuse, for fear that abandoning an oppressive situation will disqualify the worker from unemployment benefits.
McPherson v. Employment Division, 285 Or. 541, 591 P.2d 1381, 1390 (1979).
[3] It appears that in mid-February, Jacobs and Goodman finally decided to put the harasser on unpaid leave, but this had not occurred when Ms. Brown refused to return to work.
[4] See, e.g., Uniweld, 277 So.2d at 829; see also Break 'n Eat Corp. v. Commonwealth of Pennsylvania, Unemployment Compensation Bd. of Review, 60 Pa.Cmwlth. 13, 426 A.2d 1262, 1263 (1981). There, an employee beaten by a management official, quit his job without notifying the employer. The court said:

In this case, claimant's fear and apprehension were emotional reactions caused by the severe beating imposed upon him his last day of work. Such fear and apprehension were, therefore, grounded in reality. We believe it is reasonable to conclude that the beating incident can be deemed to have provided the claimant with real, not imaginary, substantial, not trifling reasons which `compelled' his termination of employment.
[5] In Smalls, an extremely religious construction worker quit because of the obscene language present at the work site. Although the Smalls court did mention that the worker had not sought corrective action, the basis for the court's decision was the worker's refusal to identify the language during his hearing, which made it impossible to determine if the work environment was abusive. The court's opinion suggests that if the work environment were abusive, Smalls would be entitled to collect unemployment.