871 So.2d 997 (2004)
Penelope KLOEPPER, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION, Appellee.
No. 5D03-1194.
District Court of Appeal of Florida, Fifth District.
April 16, 2004.
*998 Penelope Kloepper, Kissimmee, pro se.
John D. Maher, Deputy General Counsel, Unemployment Appeals Commission, Tallahassee, for Appellees.
SHARP, W., J.
Kloepper appeals from an order of the Unemployment Appeals Commission which reversed the decision of the appeals referee and held Kloepper was not entitled to unemployment benefits. Because we conclude that the Commission ignored and modified the referee's fact findings on critical matters, we reverse.
Kloepper was a front-desk agent at a Ramada Inn in Kissimmee, Florida, operated by Fountain Park Hospitality, Inc. In October 2002, Kloepper quit her job. She requested unemployment benefits and they were denied. She requested a hearing at which she testified she left her position as a front desk agent because she was being "forced" out, her work hours were being cut, and she was constantly becoming ill due to unhealthy conditions in her work site.
The testimony at the hearing was controverted. The appeals referee ruled in favor of Kloepper, making the following findings and conclusions:
Findings of Fact: The claimant was employed as front desk help beginning on March 1, 1997. The claimant never told the supervisor that she had medical problems and dissatisfactions with the job. The claimant was diagnosed with bronchitis four times and pneumonia as result of the work environment. The claimant advised the employer of her medical diagnoses. The employer did not address the claimant's concerns until after OSHA inspected the jobsite. The employer stated that he purchased the job site in the condition that caused the claimant's medical problems. The claimant was dissatisfied with the working conditions and quit the job on October 24, 2002.
Conclusions of Law: The law provides that a claimant who has voluntarily left work without good cause as defined in the statute shall be disqualified from receiving benefits. "Good cause" includes only such cause as is attributable to the employing unit or which consists of an illness or disability of the claimant requiring separation from the work. The term "work" means any work, whether full-time, part-time or temporary.
The record and evidence in this case show that the claimant was dissatisfied with the working conditions and voluntarily quit the job.
An individual who leaves work voluntarily, as the claimant did, carries the burden to show that the leaving was with good cause attributable to the employer, in order to qualify for unemployment compensation benefits.
That burden has been met in this case. The claimant had a duty to and did advise the employer of any concerns in order to give the employer an opportunity to address them. The claimant asked the employer for help in making the job suitable. The claimant made reasonable efforts to preserve the employment.

*999 The claimant has shown that the employer violated the agreement of hire, that the separation was attributable to the employer, or that working conditions were so harsh as to require separation from employment. Moreover, the steps taken to preserve the employment requires the referee to conclude that the claimant voluntarily quit the job with good cause attributable to the employer, or for reasons of health. Therefore, it is concluded that the claimant is not disqualified from the receipt of benefits.
There were conflicts in testimony which came before the referee for resolution. All relevant conflicts were resolved in favor of the claimant, based upon the candor of the parties at the hearing.
An employee who voluntarily leaves her employment without good cause attributable to her employer is not eligible to receive unemployment compensation benefits. § 443.101(1)(a), Fla. Stat. This subsection only protects workers of employers who wrongfully cause their employees to "voluntarily" leave their employment. The burden is on the claimant to show that her voluntary departure from employment was attributable to the wrongful conduct of her employer. Brown v. Unemployment Appeals Com'n, 633 So.2d 36 (Fla. 5th DCA), rev. denied, 642 So.2d 1362 (Fla.1994), cert. denied, 513 U.S. 1082, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995).
"Good cause" for voluntarily quitting are those circumstances which would impel the average, able bodied, qualified worker to give up his employment. The standard for determining good cause is a standard of reasonableness applied to the average man or woman, and not to the supersensitive. Brown; Ritenour v. Unemployment Appeals Commission, 570 So.2d 1106 (Fla. 5th DCA 1990).
However, once the referee makes a determination regarding a claim, the Commission reviews that decision to determine whether the referee's findings of fact were based on competent substantial evidence in the record and whether the proceedings on which the findings were based complied with the essential requirements of the law. Where there is competent substantial evidence to support the referee's findings of fact, the Commission may not reweigh the evidence and substitute its findings of fact for those of the referee. Kelly v. Unemployment Appeals Com'n, 823 So.2d 275 (Fla. 5th DCA 2002); Anderson v. Unemployment Appeals Com'n, 822 So.2d 563 (Fla. 5th DCA 2002).
The Commission may reach a different conclusion of law from that of the referee. Ritenour. However, the Commission may not modify a referee's findings of fact to reach a different legal conclusion nor rely on facts that were not established at the hearing conducted by the referee. Kelly; Anderson.
Here the Commission seems to have relied on "facts" not established nor found by the appeals referee in order to reach a different legal conclusion. The Commission states Kloepper complained to the employer about her working conditions and the employer responded to her complaints and the subsequent OHSA investigation "by, among other efforts, replacing the office carpet and wallpaper and by cleaning the office." (emphasis added).
Kloepper testified her employer, Gualano, had the office cleaned, the carpet replaced and the wallpaper stripped down. However, there seems to be no testimony Gualano did anything else. In other words, there were no "other efforts" as the Commission states.
The Commission also states it was not specifically established that the employer *1000 refused to specifically resolve any of Kloepper's complaints. However, the appeals referee found the employer did not address Kloepper's concerns until after OSHA inspected the jobsite. Furthermore, the employer did not present evidence its remodeling resolved Kloepper's health problems. Kloepper testified her doctor said her illnesses were caused by mold and mildew in the office, poor air-conditioning and the ventilation system. There was no evidence the air-conditioner and ventilation systems were cleaned.
The Commission further states it was not established that the employer violated Kloepper's terms of employment by cutting her hours or by requiring her to wear her work uniform while on duty. However, the appeals referee made no findings on these two issues, both of which were disputed by the parties. The appeals referee did note that all relevant conflicts in the evidence were resolved in Kloepper's favor.
Finally, the Commission states the evidence indicates Kloepper "worked under essentially the same conditions for more than the last year of her employment. Thus the claimant did not meet her burden of establishing that health reasons required her to quit."
Kloepper testified she had pneumonia twice and bronchitis at least twice in 2002, the last year she was at the hotel. Kloepper also testified she filed a worker's compensation claim for pneumonia and/or bronchitis. Kloepper admitted she would have continued to work at the hotel if she did not find another job because she had to have the money and benefits. The fact that Kloepper stayed on the job does not mean the unhealthy conditions were remediedonly that she needed the pay and benefits.
Spangler v. Unemployment Appeals Com'n, 632 So.2d 98 (Fla. 5th DCA 1994), is very similar to this case. Spangler worked as a stocker at a Wal-Mart store. She was required to move overstocked goods which had been stored for more than two years. The cartons were covered with rodent droppings, blood and urine. She developed a rash and upper respiratory illness, which she thought had been caused by the unsanitary conditions. She complained about the conditions and asked for gloves and a mask but was told she would have to provide these items for herself. When she refused to work in the storage area, she was sent home, and not paid. Later Spangler was told to work in the storage area again and when she complained, the manager told her she would have to "clock out" or go home. Her supervisor told her there were no other job openings in the store, and that as part of her assignment, she would be expected to work in the storage area. Spangler then resigned.
The hearing officer determined that the conditions in the storage area in which Spangler was required to work were unsanitary, and that no employee should be required to work in such conditions. However, the hearing officer concluded Spangler was not entitled to unemployment compensation because she did not allow her employer sufficient time to remedy the situation. The Commission affirmed.
On appeal, this court held the record supported the hearing officer's finding that no individual should be required to work around rodents or rodent droppings against her will. However, the record did not support the hearing officer's conclusion that had Spangler's employer been given more time, something would have changed to ameliorate her working conditions, and that she was unreasonable for not waiting longer for her employer to change her job situation. Although an employee should be expected to make reasonable efforts to *1001 preserve her employment, there was nothing Spangler could have done to remedy the unsanitary and unhealthy working conditions. Nor did her employer offer her any hope of a transfer or other remedy.
Here the appeals referee specifically found that Kloepper was diagnosed with bronchitis and pneumonia as a result of the work environment. Just as Spangler should not be required to work around rodents or rodent droppings, Kloepper should not have to work in an environment which causes bronchitis and pneumonia. Although Kloepper's employer did take some steps to correct the problem, the appeals referee did not find these steps actually corrected the problem.
The two cases the Commission relies on to support its decisionBrown v. Unemployment Appeals Com'n, 633 So.2d 36 (Fla. 5th DCA), rev. denied, 642 So.2d 1362 (Fla.1994), cert. denied, 513 U.S. 1082, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995) and State Department of Commerce v. Dietz, 349 So.2d 1226 (Fla. 2d DCA 1977)are distinguishable. In both cases, the employer corrected the unsuitable work condition. Brown (employer offered to transfer employee who was sexually harassed to another building, away from harasser); Dietz (employee, who was disgruntled because he was assigned to lesser paid work, was told by his supervisor that if he returned to work he would, upon request, be reassigned to his previous position). Here the employer took some steps to remedy the problem but did not establish that the problem was in fact remedied.
REVERSED and REMANDED.
MONACO and TORPY, JJ., concur.