LAWSON, J.
William Presnell appeals an order of the Unemployment Appeals Commission (UAC) that affirmed an appeals referee’s decision to deny him unemployment benefits. The denial was based upon a finding that Presnell voluntarily left his employment without good cause. Because there is evidence in the record to support this finding, we affirm the UAC’s order. In doing so, however, we must first address a threshold question regarding our authority to consider this appeal.
*1114 William Presnell lives in Brooksville, Florida, which is within our jurisdiction. He was employed by Diamond Retail Services, Inc., a North Carolina company described only as a “retail delivery and assembly company.” At the time he left Diamond, Presnell was working as a “technician” performing “delivery and assembly” services for Diamond’s Florida customers. The record contains no explanation of the type of goods handled by Presnell for Diamond, and identifies Pres-nell’s job site only as “many locations” in “many cities.” The evidentiary hearing in this matter was conducted by telephone, with the appeals referee located in Tallahassee, Presnell participating from Brooksville, and Diamond’s representative participating from North Carolina. The record does not reveal where Presnell initially filed for benefits. He ultimately filed his notice of appeal with the Second District Court of Appeal, which sua sponte mailed it to our clerk with a short note explaining that, after review, that court had determined that the notice should have been filed with our court.
Section 443.151(4)(8), Florida Statutes, provides that UAC orders are to be reviewed by the “district court of appeal in the appellate district in which the issues involved were decided by an appeals referee.” More than a decade ago, the Third District Court of Appeal applied this statute to appeals from a decision rendered after a telephonic hearing. The court found that, with respect to a telephonic hearing, “the issues involved were decided” in more than one district when parties to the hearing participated from multiple districts. Mendelman v. Dade County Public Schools, 674 So.2d 195 (Fla. 3d DCA 1996). The opinion also contains a reasoned explanation as to why this is “the fairest interpretation of the statute.” Id. at 196-97. We have consistently followed Mendelman, and have routinely decided UAC appeals from telephonic hearings filed with our court as long as one of the parties to the hearing was participating from a location within our jurisdiction. Applying Mendelman, our court is authorized to hear this appeal because Presnell participated in the hearing from Brooks-ville, a location within our jurisdiction.
The Second District Court of Appeal, “[w]ith some reluctance,” reached a different result in Lynch v. Unemployment Appeals Commission, 988 So.2d 25 (Fla. 2d DCA 2008). In Lynch, the Second District discussed several public policy concerns that weigh in favor of allowing a litigant to have his or her appeal heard in the district where the employment relationship is centered and where the matters at issue therefore arose. Nevertheless, the Lynch court found that it was bound by the plain language of the statute, which it believed required the appeal to be filed in the district from which the appeals referee participated in the telephonic hearing. The court basically reasoned that the issues are decided where the decision-maker is physically located during the telephonic hearing. In that case, like ours, the hearing officer initiated the telephonic hearing from an office in Tallahassee. Therefore, the Second District found that it was not authorized to consider the appeal, and transferred the case to the First District Court of Appeal for resolution.
Our research has uncovered a third interpretation of this statute, found in Egner v. Unemployment Appeals Commission, 633 So.2d 1157 (Fla. 1st DCA 1994). In Egner, the First District read the statute as requiring the appeal to be filed in the district from which the appeals referee rendered his or her written decision in the case. Because the referee’s written decision in that case was rendered from an unemployment office in St. Petersburg, the First District found that it was not author *1115 ized to consider the appeal, and transferred the case to the Second District for resolution.
We, of course, fully agree with the proposition that a statute must be interpreted in accordance with its plain and obvious meaning, if there is one. The problem here is that the statute is not particularly well-written and, in our view, cannot be applied in accordance with its plain language. A plain reading of the statute would require a litigant to file its appeal in the court with jurisdiction over the location where the appeals referee is physically located when he or she actually reaches a decision in the case. The problem with applying the statute in this fashion is that the parties have no idea where the hearing officer was physically located when she decided the case. We know where she was when she took the evidence. A written decision was rendered later, which memorializes the final result of her decision-making process. And, we know the location from which that written decision is announced. But, we have no idea whether the referee reached a final decision during the hearing or sometime later, perhaps after further reflection or after research regarding the matters at issue, and perhaps at some location outside of the jurisdiction from which she took evidence or later released the written order memorializing that decision.
The problem with the Second District’s interpretation in Lynch is that it reads “[where] the issues involved were decided by an appeals referee” to mean where evidence was received by an appeals referee, and these are not really the same thing at all. A similar flaw plagues the First District’s interpretation in Egner, and the Third District’s interpretation in Mendel-man. Each interpretation is a reasonable attempt to apply this poorly-worded statute. The problem is that a literal reading of the statute would require us to determine where the appeals referee was located when she reached her decision. And that is not remotely workable for obvious reasons.
We agree with the Second and Third Districts that the poorly-worded language of this statute does seem to be pointing toward the location of the hearing as the basis for determining district court venue (since “the issues” are “decided” as a result of the evidentiary hearing). However, we do not believe that the statutory language dictates the more narrow interpretation subscribed by the Second District in Lynch. For this reason, we will continue to follow Mendelman, and our prior practice, until the Legislature further clarifies the statute — which we would encourage it to do.
Moving to the substantive issue raised on appeal, a person who voluntarily leaves a job is not entitled to unemployment benefits unless the person can demonstrate that he or she left for good cause attributable to the employer. See § 443.101(l)(a), Fla. Stat. (2007); see also, Kloepper v. Unemployment Appeals Comm’n, 871 So.2d 997, 998 (Fla. 5th DCA 2004) (“Ajq individual who leaves work voluntarily, as the claimant did, carries the burden to show that the leaving was with good cause attributable to the employer, in order to qualify for unemployment compensation benefits.”). “Good cause” is defined as “circumstances which would impel the average, able-bodied, qualified worker to give up employment.” Ritenour v. Unemployment Appeals Comm’n, 570 So.2d 1106, 1107 (Fla. 5th DCA 1990).
Only two witnesses testified at the hearing in this case, and neither party presented any documentary evidence. Presnell testified that he left Diamond only after his manager stopped sending him work and would not return his calls. According *1116 to Presnell, the company deliberately directed virtually all work to other technicians in order to force him to leave his job. We agree that these facts, if proved, would constitute good cause attributable to Diamond. Diamond’s witness, however, claimed that the company’s business had simply slowed down and that “the work was actually slower for everybody and it wasn’t a matter of not giving Mr. Presnell work. It is a matter of the work not being there for the entire market so to speak.” According to Diamond’s representative, this slow-down occurs at the same time each year; Mr. Presnell was aware of the seasonal nature of the company’s business; and, Mr. Presnell left Diamond shortly before the company’s work traditionally picks back up. If true, of course, these circumstances would not constitute good cause for Presnell to leave his job.
“An appeals referee is the trier of fact, and he or she is privileged to weigh and reject conflicting evidence.” Ritenour, 570 So.2d at 1107 (citing David Clark & Associates v. Kennedy, 390 So.2d 149 (Fla. 1st DCA 1980) and McCray v. Dept. of H.R.S., 384 So.2d 980 (Fla. 3rd DCA 1980)). In this case, the referee heard the conflicting testimony and found that Pres-nell had not carried his burden of demonstrating good cause. On review, we cannot reweigh the evidence. Id. Accordingly, we affirm, and certify conflict with Lynch and Egner.
AFFIRMED; CONFLICT CERTIFIED.
PALMER, C.J., concurs.
GRIFFIN, J., concurs with opinion.