[Cite as *Kelly v. Stark Cty. Commrs.*, 2018-Ohio-950.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MICHAEL F. KELLY, | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff - Appellant | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| STARK COUNTY COMMISSIONERS, | : | Case No. 2017CA00148 |
| ET AL., | : | |
| | : | |
| Defendant - Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Stark County Court
                                                          of Common Pleas, Case No. 2016
                                                          CV 2808

JUDGMENT:                                      Affirmed

DATE OF JUDGMENT:                      March 12, 2018

APPEARANCES:

For Plaintiff-Appellant                         For Defendant-Appellee, Director
                                                          Department of Job and Family Services

CRAIG T. CONLEY
604 Huntington Plaza                        SUSAN M. SHEFFIELD
220 Market Avenue South                  Senior Assistant Attorney General
Canton, Ohio 44702                          20 West Federal Street, 3rd Floor
                                                          Youngstown, OHio 44503

                                                          For Defendant- Appellee,
                                                          Stark County Board of Commissioners

                                                          VIVIANNE WHALEN DUFFRIN
                                                          Assistant Prosecuting Attorney
                                                          110 Central Plaza South, Suite 510

*Baldwin, J.*

{¶1} Plaintiff-appellant Michael F. Kelly appeals from the July 17, 2017 Order of the Stark County Court of Common Pleas affirming the decision of the Unemployment Compensation Review Commission.

STATEMENT OF THE FACTS AND CASE

{¶2} Appellant Michael F. Kelly was employed by the Stark County Probate Court as a Staff Attorney for Judge Dixie Park from March 9, 2015 until July 8, 2016 when his resignation became effective. Appellant applied for unemployment compensation benefits and his application was denied on August 1, 2016. Appellant then appealed from that determination. On August 31, 2016, the Director of the Ohio Department of Job and Family Services issued a redetermination decision disallowing appellant's claim. Appellant, on September 16, 2016, filed an appeal from the redetermination decision.

{¶3} A telephonic hearing was held on October 27, 2016. The following testimony was adduced at the hearing before the hearing officer.

{¶4} In February or March of 2016, appellant notified Judge Park that he would be having back surgery and needed to be off of work for several months. According to appellant, after being told of the surgery, Judge Park became very hostile to him. Appellant did not tell Judge Park that he was unhappy with her treatment of him or complain to any other county official.

{¶5} On April 1, 2016, his last day of work before surgery, appellant was told to finish the project that he was working on and "just get out" and go home. He testified that Judge Park spoke to him in an angry tone of voice. After turning in his project, appellant

left and went home. According to appellant, about two hours later, Judge Park texted him about leaving.

**{¶6}** When appellant returned to work on June 27, 2016 after his medical leave, Judge Park was irate with him and told him that she needed to see him in her chambers immediately with the bailiff. When the three were in the Judge's chambers, appellant handed the Judge his resignation letter and two week notice before anything was said. Appellant testified that he felt that he was about to be fired and did not want an involuntary termination on his work record. Appellant was told to go home because he did not have documentation from his physician releasing him to return to work. Appellant returned the next day with documentation and was told to leave. He was paid his normal salary through the end of his two week notice period.

**{¶7}** At the hearing, appellant testified as follows when asked about the work environment under Judge Park:

Mr. Kelly: I had become, it was so stressful, not only for me but I think for

a lot of the employees. We just always felt that we had to watch what we

said or did, every little thing. Like, we'd have to be walking on eggshells, so

to speak, so as not to set the judge off because at times, you know, she

was prone to what I would view as irrational anger. And so, we always had

to watch every little thing that you were doing and it just got to be too much.

**{¶8}** Transcript at 10.

**{¶9}** Bradford Carlton, who had been employed from August 12, 2012 through approximately May 24, 2013 as a Staff Attorney for Judge Park, testified that he resigned. He testified that he told the Judge that he was terrified of her and could not stand working

there any longer because of the stressful work environment.   When questioned about the "Open Door Policy" in the Probate Court's personnel manual indicating that employees who felt that they had not been treated fairly or had a complaint should orally express their concerns to Judge Park or the chief bailiff, Carlton testified that "when I read it I actually laughed out loud because I couldn't imagine anyone feeling comfortable going in and expressing to her any concerns they had." Transcript at 16.

{¶10} The hearing officer, in a Decision mailed on October 28, 2016, found that appellant had quit his employment without just cause and was not entitled to unemployment compensation benefits. The hearing officer affirmed the Director's redetermination decision issued on August 31, 2016. After appellant timely requested further review by the Review Commission, his request was disallowed.

{¶11} Appellant, on December 29, 2016, filed an appeal with the Stark County Court of Common Pleas. The trial court, pursuant to an Order filed on July 17, 2017, denied appellant's appeal and affirmed the decision of the Commission. The trial court found that appellant had quit his employment without just cause because he failed to pursue all available options before quitting.

{¶12} Appellant now raises the following assignment of error on appeal:

{¶13} THE REVIEWING COURT BELOW ERRED IN DENYING APPELLANT'S ADMINISTRATIVE APPEAL.

I

{¶14} Appellant, in his sole assignment of error, argues that the trial court erred in denying his administrative appeal and finding that appellant had quit his employment without just cause and was not entitled to unemployment compensation. We disagree.

**{¶15}** R.C. 4141.282(H) governs the standard of review to be applied by the court of common pleas and subsequent reviewing courts in unemployment compensation cases. The statute states, in relevant part, as follows: "If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission."

**{¶16}** Our standard of review is the same. *Tzangas, Plakas & Mannos v. Administrator, Ohio Bureau of Employment Services,* 73 Ohio St.3d 694, 1995-Ohio-206, 653 N.E.2d 1207. That is, the court of appeals must also determine whether the commission's decision was unlawful, unreasonable, or against the manifest weight of the evidence. We are required to focus on the decision of the commission, rather than that of the trial court. *Huth v. Director, Ohio Dept. of Job and Family Services*, 5th Dist. Tusc. No. 2014 AP 03 0011, 2014-Ohio-5408, 26 N.E.3d 250.

**{¶17}** Appellate courts are not permitted to make factual findings or to determine the credibility of the witnesses; but the reviewing court does have the duty to determine whether the Commission's decision is supported by the evidence in the record. *Tzangas, supra,* at 696. This leaves the board's role as factfinder intact. *Id.* Where the commission might reasonably decide either way, this Court has no authority to upset the Commission's decision. *Bonannvo v. Ohio Dept. of Job & Family Services*, 5th Dist. Tuscarawas No. 2012 AP 02 0011, 2012-Ohio-5167, 2012 WL 5439043; *Williams v. Ohio Dept. of Job & Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, 951 N.E.2d 1031. "Every reasonable presumption must be in favor of the [decision] and the findings of facts [of the Revision Commission]." *Id.*

**{¶18}** In order to qualify for unemployment compensation benefits, a claimant must satisfy the criteria set forth in R.C. 4141.29(D)(2)(a). The section provides:

**{¶19}** (D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

**{¶20}** (2) For the duration of the individual's unemployment if the director finds that:

**{¶21}** (a) The individual quit work without just cause or has been discharged for just cause in connection with the individual's work, * * *.

**{¶22}** Pursuant to R.C. 4141.29(D)(2)(a), a claimant is ineligible for unemployment benefits if the claimant quits a job without "just cause."

**{¶23}** R.C. Chapter 4141 does not define "just cause." The Ohio Supreme Court has defined "just cause" as that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act. *Irvine v. Unemp. Bd. Of Review,* 19 Ohio St 3d 15, 17, 482 N.E.2d 587 (1985); *Tzangas, supra* at 697. "The determination of whether just cause exists necessarily depends upon the unique factual considerations of the particular case. Determination of purely factual questions is primarily within the province of the referee and the [Commission]." *Irvine, supra* at 17, 482 N.E.2d 587.

**{¶24}** In the case sub judice, appellant, upon his return to work from medical leave, tendered his typed letter of resignation to the Judge before she could say anything. In the letter, he indicated that he was quitting to "pursue other opportunities more in line with my career goals." At the hearing before the hearing officer, appellant admitted that he never got the chance to hear why the Judge had called him into her chambers but indicated that he felt that he was going to be fired. He further admitted that he had never

been disciplined or received any kind of warning in the past. We concur with the trial court that "the inference that he would be terminated is not supported by the evidence. The Appellants (sic) belief in this regard does not rise to a reasonable inference but is not more than a suspicion." Moreover, there was documentation in the record that Jude Park did not intend to terminate appellant when he returned to work.

**{¶25}** Furthermore, an employee "must notify the employer of the problem and request that it be resolved, and thus give the employer an opportunity to solve the problem before the employee quits the job; those employees who do not provide such notice ordinarily will be deemed to have quit without just cause and, therefore will not be entitled to unemployment benefits." *DiGiannantoni v. Wedgewater Animal Hosp., Inc.,* 109 Ohio App.3d 300, 307, 671 N.E.2d 1378 (10th Dist.1996). As noted by the court in *DiGiannantoni* at 307-308.

The Supreme Court, however, did not establish a *per se* rule in *Irvine* that, absent such notice, claims for unemployment benefits must be denied. Circumstances exist when an employee should not be required to give an employer notice of a problem and an opportunity to solve it. For instance, an employee who is subjected to *physical* sexual harassment by her employer and has no one to whom she can report the incident but the harassing employer may not need to give notice of the offensive conduct and wait for the employer to correct the problem before quitting. See, *e.g., Doering v. Bd. of Review* (A.D.1985), 203 N.J.Super. 241, 496 A.2d 720. But, see, *Krawczyszyn v. Ohio Bur. of Emp. Serv.* (1989), 54 Ohio App.3d 35, 560 N.E.2d 807 (employee whose supervisor pinched and kissed her

against her will on several occasions did not quit with just cause, since she did not pursue her employer's grievance procedures to correct the problem).

Thus, in applying the notice element of *Irvine,* the critical issue underlying whether an employee has quit with just cause is not whether notice was given, but rather whether an ordinarily intelligent person would have quit without giving notice under the circumstances of the case. See *Irvine, supra,* 19 Ohio St.3d at 17, 19 OBR at 14-15, 482 N.E.2d at 589-590. As a general rule, an ordinarily intelligent employee will not quit his or her job over a problem with working conditions without first bringing that problem to his or her employer's attention, requesting that it be solved, and thus giving the employer an opportunity to correct it. See *Irvine, Wilson,* and *Harmony, supra.* Nonetheless, circumstances can be envisioned where the general rule should not be dogmatically applied.

**{¶26}** Appellant did not notify Judge Park of the problem and request that it be resolved before resigning.  As noted by the trial court, appellant did not speak with Judge Park about his unhappiness towards him and her treatment of him based on his fear of her and his claim that, if he did so, he would be terminated. However, by his own admission, he had never received any discipline prior to resigning. We find that an ordinarily intelligent person would have not quit without giving notice under the circumstances of this case.

**{¶27}** Based on the foregoing, we find that the Commission's decision was not unlawful, unreasonable, or against the manifest weight of the evidence.

**{¶28}** Appellant's sole assignment of error is, therefore, overruled.

**{¶29}** Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

John Wise, P.J. and

Earle Wise, J. concur.