[Cite as *Ohio Assn. of Pub. School Emps. v. Unemp. Comp. Rev. Comm.*, 2020-Ohio-4028.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| OHIO ASSOCIATION OF PUBLIC | : | Hon. W. Scott Gwin, P.J. |
| SCHOOL EMPLOYEES, ET AL | : | Hon. Patricia A. Delaney, J. |
|  | : | Hon. Craig R. Baldwin, J. |
| Plaintiffs-Appellants | : |  |
|  | : |  |
| -vs- | : | Case No. 2020 AP 02 0005 |
|  | : |  |
| UNEMPLOYMENT COMPENSATION | : |  |
| REVIEW COMMISSION, ET AL | : | OPINION |
|  |  |  |
| Defendants-Appellees |  |  |

CHARACTER OF PROCEEDING:     Administrative appeal from the Tuscarawas
County Court of Commn Pleas, Case No.
2019AA070493

JUDGMENT:                                    Affirmed

DATE OF JUDGMENT ENTRY:       August 10, 2020

APPEARANCES:

For Plaintiffs-Appellants                   For Defendants-Appellees

DAVID YOST                                     THOMAS C. DRABICK, JR.
OHIO ATTORNEY GENERAL              OAPSE DIRECTOR
BY: LAWRENCE R.SNYDER                6805 Oak Creek Drive
ASSISTANT ATTORNEY GENERAL     Columbus, OH 43229
615 West Superior Avenue, 11th Fl.
Cleveland, OH 44113

For Claymont City School Board of Education
DONNA ANDREW
505 Rockside Road, Suite 260
Cleveland, OH 44131

*Gwin, P.J.*

{¶1}　Appellant Ohio Association of Public School Employees AFSCME Local 4, AFL-CIO and its Local 390 ["OAPSE"] and fifty-one individually named employees [Collectively "Appellants"] appeal a judgment of the Court of Common Pleas of Tuscarawas County, Ohio, which affirmed the decision of the Unemployment Compensation Review Commission ["Commission"].　The Commission had determined the fifty-one claimants listed were not entitled to unemployment compensation benefits because their employment was due to a labor dispute other than a lockout. The Appellees are the Director, Ohio Department of Job and Family Services and the Claymont City School District Board of Education.

### Facts and Procedural History

{¶2}　The Claymont City School District ["District"] and its Board of Education ["Board"] is a political subdivision, existing under the laws of the State of Ohio, which is obligated to offer a public education to the children of the communities of Uhrichsville and Dennison, Ohio. The OAPSE is a public employee union representing the District's 84 non-teaching employees.

{¶3}　The record demonstrates that OAPSE and the Board were parties to a collective bargaining agreement effective from July 1, 2014, through June 30, 2017.　The parties began negotiating a successor collective bargaining agreement on April 17, 2017 and continued until March 21, 2019. Towards that end, the record demonstrates that the parties met in bargaining sessions some twenty-two times.　The employees continued to work during this time pursuant to the terms of the previous collective bargaining agreement.

{¶4}　The parties met for bargaining sessions in January and February 2019, but no agreement was reached. On March 12, 2019, with no additional bargaining sessions

scheduled, OAPSE filed a Notice of Intent to Strike or Picket with the Ohio State Employment Relations Board (SERB). The notice filed at SERB indicated that a strike would commence at midnight on Friday March 22, 2019.

{¶5} OAPSE and the Board met on March 18, 2019, and again on March 21, 2019, lasting into March 22, 2019; however, the parties were unable to reach an agreement. Thereafter, Appellants ceased work on March 22, 2019. Appellants filed claims for unemployment compensation with the Ohio Department of Jobs and Family Services ["ODJFS"].

{¶6} A hearing was held on April 16, 2019 to determine whether the unemployment of Appellants was due to a lockout or a labor dispute other than a lockout. The parties' labor dispute ended on April 16, 2019, and Appellants began returning to work on April 17, 2019.

{¶7} On May 10, 2019, ODJFS issued a Decision on the Labor Dispute Issue. The Hearing Officer found that OAPSE deviated from the status quo by starting a work stoppage instead of continuing work under the previous agreement until there was a new agreement reached by both sides. The Hearing Officer concluded as follows:

> All of the claimants herein were unemployed due to a labor dispute other than a lockout beginning on March 22, 2019 and ending on April 16, 2019. The claimants are disqualified from receiving unemployment compensation benefits for the week which includes March 22, 2019 through the week which includes April 16, 2019, pursuant to Section 4141.29(D)(1)(a) of the Ohio Revised Code.

{¶8} On May 21, 2019, Appellants filed a Notice of Appeal of the Hearing Officer's Decision on Labor Dispute.

{¶9} On June 20, 2019, the Commission issued a Decision Disallowing an Application for Appeal from a Decision of the Director in a Labor Dispute Case, which disallowed Appellants' application for appeal. The Commission's Decision disallowing the appeal should be considered as an affirmation of the Director's Decision. *See* R.C. 4141.283(D)(2). The Appellants filed an Administrative Appeal in the court of common pleas on July 18, 2019. The trial court issued a written decision and entry upholding the denial of benefits on January 30, 2020.

*Assignment of Error*

{¶10} Appellants raise one Assignment of Error,

{¶11} "I. THE COMMON PLEAS COURT ERRED AS A MATTER OF LAW WHEN IT UPHELD THE DECISION OF THE UNEMPLOYMENT COMPENSATION REVIEW COMMISSION (UCRC) DENYING APPELLANT/CLAIMANTS' CLAIMS FOR UNEMPLOYMENT COMPENSATION BENEFITS BECAUSE THE CLAIMANTS' UNEMPLOYMENT WAS CAUSED BY A LOCKOUT."

*Law and Analysis*

{¶12} The parties agree that the issue in this matter is whether Appellants' unemployment was the result of "a labor dispute other than a lockout."

**1.1 Standard of Appellate Review.**

{¶13} The statutory standard of review that must be applied by the common pleas courts and appellate courts in unemployment compensation appeals of decisions rendered by the Commission under R.C. 4141.281 is set forth in R.C.

4141.282(H) as follows:

> The court shall hear the appeal upon the certified record provided by the commission. If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission.

{¶14} R.C. 4141.282(H) does not create distinctions between the scope of review of common pleas courts and appellate courts. The common pleas court and this Court utilize the same, limited standard of review in unemployment compensation cases; specifically, reviewing courts may reverse determinations only "if they are unlawful, unreasonable, or against the manifest weight of the evidence." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.*, 73 Ohio St.3d 694, 696, 653 N.E.2d 1207 (1995); *Kelly v. Stark County Commissioners,* 5th Dist. Stark No. 2017CA00148, 2018-Ohio-950, 108 N.E.3d 622(2018), ¶16.

{¶15} Reviewing courts do have the duty to determine whether the Commission's decision is supported by the evidence in the record. *Tzangas, Plakas, & Mannos v. Administrator, Ohio Bureau of Employment Services,* 73 Ohio St.3d 694, 696, 653 N.E.2d 1207 (1995), *citing Irvine v, Unemployment Compensation Board of Review,* 19 Ohio St.3d 15, 17-18, 482 N.E.2d 587 (1985).

{¶16} In *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, the Ohio Supreme Court clarified the standard of review appellate courts should apply when assessing the manifest weight of the evidence in a civil case. *SST Bearing*

*Corp. v. Twin City Fan Companies, Ltd.*, 1st Dist. Hamilton No. C110611, 2012–Ohio–2490, ¶ 16.  The Ohio Supreme Court held the standard of review for manifest weight of the evidence for criminal cases stated in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355 is also applicable in civil cases.  *Eastley*, at ¶ 17–19, 972 N.E.2d 517.

{¶17}  Weight of the evidence concerns "the inclination of the greater amount of *credible evidence*, offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.  Weight is not a question of mathematics, but depends on its *effect in inducing belief*."  *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541 (emphasis in original); *Eastley,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶12.  "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)."  *Eastley*, at ¶ 19.

{¶18}  "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact.  In determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the findings of fact. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most

favorable to sustaining the verdict and judgment." *Easterly*, at ¶ 21, *citing Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶19}  The determination of factual questions and evaluation of witnesses is the responsibility of the Commission and, accordingly, the parties on appeal are not entitled to a trial de novo in the common pleas court under R.C. 4141.282(H).  *See Tzangas, supra, at 697; Simon v. Lake Geauga Printing*, 69 Ohio St.2d 41, 430 N.E. 2d 468 (1982).  As the trier of fact, the Commission and its hearing officers are vested with the power to review the evidence and to believe or disbelieve the testimony of witnesses. Therefore, the appellate courts in unemployment benefit cases must defer to the Commission with respect to purely factual issues that concern the credibility of witnesses and the weight of conflicting evidence.  *Huth v. Director of the Department of Job and Family Services.*, 5th Dist. Tuscarawas No. 2016 AP 12 0059, 2017-Ohio-4430, *¶28.*

**1.2. Issue for Appellate Review:** *Whether the decision of the Commission was unlawful, unreasonable, or against the manifest weight of the evidence.*

{¶20}   R.C. 4141.29(D)(1)(a) states in part that: "* * * no individual may serve a waiting period or be paid benefits * * * [f]or any week with respect to which the director finds that * * * the individual's unemployment was due to a labor dispute other than a lockout * * *."

{¶21}  In *Zanesville Rapid Transit, Inc. v. Bailey*, 168 Ohio St. 351, 155 N.E.2d 202(1958) the Ohio Supreme Court defined a "lockout" as a "cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more desirable terms."  Id. at 354.  A lockout is not confined to an actual physical

plant closing; employees may be subjected to a constructive lockout as well. Id. A constructive lockout occurs when "the conditions of further employment announced by the employer are such that the employees could not reasonably be expected to accept them and the terms manifest a purpose on the part of the employer to coerce his employees into accepting them or some other terms." Id. at 355.

{¶22} In *Zanesville*, the Supreme Court focused on whether the employer imposed unreasonable conditions on its employees, which left the employees no alternative, but to cease working. However, in *Bays v. Shenango Co.*, 53 Ohio St.3d 132, 559 N.E.2d 740(1990) the Court adopted the "status quo" test to determine whether a labor dispute is considered a strike or a lockout. Quoting *Erie Forge & Steel Corp. v. Unemployment Compensation Board of Review*, 400 Pa. 440, 443-445, 163 A.2d 91(1960), the Ohio Supreme Court stated:

> The sole test under * * * the Unemployment Compensation Law * * * of whether the work stoppage is the responsibility of the employer or the employees is reduced to the following: Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout' and the disqualification

of unemployment compensation benefits in the case of a 'stoppage of work because of a labor dispute' does not apply."  Id. at 134-135.

{¶23}   The "status quo" test, therefore, requires a determination of "which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing."  *Bays,* 53 Ohio St.3d at 135, 559 N.E.2d 740, *quoting Philco Corp v. Unemployment Compensation Board of Review*, 430 Pa. 101, 103, 242 A.2d 454, 455(1968).

{¶24}  In *Albaugh v. Unemployment Compensation Review Commission,* 5th Dist. Guernsey No. 00CA024, 2001 WL 520967(May 11, 2001) this Court determined *Bays,* and *Zanesville*, must be interpreted together,

> Although the *Bays* court cited *Zanesville*, it did not overrule it, nor did it explain when to apply *Bays* and when to apply *Zanesville*.  We must review both cases to determine how they can be construed together.  At the outset, we find they both present a reasonableness standard.  *Bays* deals with situations where the status quo has been changed, and directs us to determine whether the party who changed the status quo acted reasonably. If the party who changed the status quo is the employer, the *Bays* test is employed to review the employer's actions.  If the court finds the employer acted reasonably in offering its best and final offer, then the analysis shifts to an examination of whether the employees' response to the offer was reasonable, which is the *Zanesville* analysis.  In other words, the Supreme Court has provided us with a framework which will analyze both parties' actions in turn.  It is only logical to place the burden of proof on the actor in

each instance, to show its actions were reasonable.  The first step must be to determine which party altered the status quo * * * Pursuant to *Bays,* the parties may change the status quo only after allowing it to exist for a "reasonable time."

*Albaugh,* 2001 WL 520967 at *2.

{¶25}  The record establishes the Board did not withhold work from Appellants in an effort to obtain more desirable terms in a new collective bargaining agreement.  The record established that the previous collective bargaining agreement had been in effect from July 1, 2014 through June 30, 2017.  T. at 55.  The Appellants continued to work under the terms of that agreement as negotiations on a successor collective bargaining agreement which began on April 17, 2017 and continued until March 21, 2019.

{¶26}  The Board had previously made a Last Best and Final offer on November 15, 2018; however, this offer was never implemented.  The Board rescinded the offer due to a mistake in the wording.  T. at 42; 69.  The record supports that the employees continued to work during this time pursuant to the terms of the previous agreement.  A negotiation session in January 2019 and a negotiation session in February 2019 failed to reach a new agreement.  Appellants filed a notice to strike on March 12, 2019, with a strike commencement date of March 22, 2019 at 12:01 a.m.

{¶27}  The parties met on March 18, 2019 and again on March 21, 2019.  At approximately 11:00 p.m. the Board presented Appellants with a new Last Best and Final offer which was different from the previous one and changed the terms and conditions. The terms and conditions changed were primarily issues with insurances, pay rates, and

back pay. The Board never stated that it was going to implement the terms and conditions on March 22, 2019.

{¶28} The agreement was subject to approval by the OAPSE members and by a vote of the Board. Because the strike deadline had passed, OAPSE asked the Board representatives if they would agree to extend the R.C. 4117.11 strike deadline. The Board declined to agree to a rolling extension, suggesting that OAPSE could simply "pull the strike" notice and refile the next day. (T. at 25-26, 29). The Board was willing to continue negotiations and operate under the terms of the prior contract until finalization of a new collective bargaining agreement. (T. at 33, 37-38). OAPSE was never told that the employees could not continue to work pending finalization and in fact could have worked throughout the period of the work stoppage. (T. at 34, 60). OAPSE chose to alter the status quo and began its strike at the scheduled date and time. (T.at 65).

{¶29} The Board provided evidence that it had, in fact, entered into a contract with a company called Huffmaster for various services to become effective at the time of the strike date provided by OAPSE. (T. at 17; 25; 53). By delaying the strike date to what was effectively a day-to-day extension, the Board would be put in the position of either forfeiting the security afforded by the ten-day period or paying Huffmaster for services it did not need. (T.at 38-39; 53).

{¶30} The decision relied upon by Appellants is distinguishable from their case. In *Albaugh v. Unemployment Compensation Review Commission*, 5th Dist. Guernsey No. 00CA024,2001 WL 520967 May 11, 2001), "the Library notified the Union it would implement its final and best offer on April 18, 1999. On April 12, 1999, the Union notified the

Library this was not acceptable and that the employees would strike on April 24, 1999. On April 24, 1999, the employees of the library did go on strike." Id., at *1. The Court found that the public employer changed the status quo by threatening to implement its last, best and final offer. In the case at bar, the record contains no evidence that the Board ever threatened to implement the terms of its last, best and final offer. The record is clear OAPSE could have pulled the strike notice, obtained clarification and refiled the strike notice after ten days if it were necessary. The record contains evidence that the Appellants could have continued to work under the terms of the prior collective bargaining agreement while continuing to pursue a resolution.

{¶31} As there is competent, credible evidence to support the Commission's decision that the OAPSE employees were unemployed as the result of a labor dispute other than a lockout pursuant to R.C. 4141.29(D)(1)(a), the Commission's decision must be upheld by this court. *Huth v. Director, Ohio Department of Job and Family Services,* 5th Dist. Tuscarawas No. 2016 AP 12 0059, 2017-Ohio-4430, 93 N.E.3d 124, ¶49.

{¶32} The Commission's decision was not unlawful, unreasonable or against the manifest weight of the evidence.

{¶33} Appellants' sole Assignment of Error is overruled.

{¶34} The judgment of the Tuscarawas County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur